IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENISHAW PLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TESA SA, and | ) |
| HEXAGON METROLOGY, INC. (also dba | ) |
| TESA USA, BROWN & SHARPE, INC., | ) |
| and SHEFFIELD MEASUREMENT, INC.), | ) |
| | ) |
| Defendants. | ) |

Case No. 08cv3485

Judge: Pallmeyer
Magistrate Judge: Nolan

**Jury Trial Demanded**

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY OLIFF & BERRIDGE, PLC FROM ITS REPRESENTATION OF RENISHAW PLC

Local Counsel
Patrick G. Burns
(pburns@gbclaw.net)
B. Joe Kim
(jkim@gbclaw.net)
GREER, BURNS & CRAIN
300 South Wacker Drive
Suite 2500
Chicago, Illinois  60606
Telephone: (312) 360-0080
Facsimile: (312) 360-9315

James A. Oliff
(joliff@oliff.com)
Edward P. Walker
(ewalker@oliff.com)
John W. O'Meara
(jomeara@oliff.com)
Aaron L. Webb
(awebb@oliff.com)
John A. Radi
(jradi@oliff.com)
OLIFF & BERRIDGE, PLC
277 South Washington Street
Suite 500
Alexandria, Virginia  22314
Telephone: (703) 836-6400
Facsimile: (703) 836-2787

Attorneys for Plaintiff Renishaw plc.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   COUNTER-STATEMENT OF FACTS .................................................3

      A.    The Hexagon Group Is Not A Unitary Entity For Conflict Purposes......................3

      B.    O&B's Representation of CEJ and Leica Has Nothing to Do With O&B's
            Representation of Renishaw .........................................................4

            1.    Renishaw ...................................................................4

            2.    CEJ and the Mitutoyo Litigations ...........................................4

            3.    The Leica Patent Prosecution Matters ......................................5

      C.    O&B's Attempt To Resolve This Issue ...........................................6

III.  ARGUMENT ......................................................................................7

      A.    General Standards .......................................................................7

      B.    Defendants Have Not Established A Conflict Resulting From O&B's
            Representation Of Renishaw In This Matter ...........................................8

      C.    A Balancing Of The Parties' Interests Militates Against Disqualification
            Even If A Conflict Is Found.........................................................13

IV.   CONCLUSION..................................................................................15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alcan Int'l Ltd. v. S.A. Day Mfg. Co.,*
   176 F.R.D. 75 (W.D. N.Y. 1996)................................................................. 9, 14

*Andrew Corp. v. Beverly Mfg. Co.,*
   415 F.Supp.2d 919 (N.D. Ill. 2006) .............................................................. 12

*Apex Oil Co. v. Wickland Oil Co.,*
   1995 WL 293944 (E.D. Cal. 1995)............................................................... 10

*Board of Managers of Eleventh Street Loftominium Assoc. v. Wabash*
   *Loftominium L.L.C.,*
   376 Ill. App. 3d 185 (Ill. App. Ct. 2007) .................................................. 8, 12

*Certain Underwriters at Lloyd's, London v. Argonaut Insurance Co.,*
   264 F. Supp. 2d 914 (N.D. Cal. 2003) ......................................................... 12

*Colorpix Systems of America v. Broan Mfg. Co.,*
   131 F. Supp. 2d 331 (D. Conn. 2001) ........................................................... 12

*Evans v. Artek Sys. Corp,*
   715 F.2d 788 (2d Cir. 1983) ........................................................................... 7

*Gould, Inc. v. Mitsui Mining and Smelting Co.,*
   738 F. Supp. 1121 (N.D. Ohio 1990)............................................................ 14

*Guillen v. City of Chicago*
   956 F. Supp. 1416 (N.D. Ill. 1997) ................................................................ 7

*Jones v. Rabanco, Ltd.,*
   2006 WL 2237708, *4 (W.D. Wash. 2006).................................................. 12

*Pennwalt Corp. v. Plough, Inc.,*
   85 F.R.D. 264 (D. Del. 1980) .................................................... 2, 10, 11, 14

*Ramada Franchise System, Inc. v. Hotel of Gainesville Assocs.,*
   988 F. Supp. 1460 (N.D. Ga. 1997)........................................................ passim

*Reuben H. Donnelley Corp. v. Sprint Publishing & Advertising, Inc.,*
   1996 WL 99902, *2 (N.D. Ill. 1996) ...................................................... passim

*Safe-T-Products, Inc. v. Learning Resources, Inc.,*
   2002 WL 31386473, *2 (N.D. Ill. 2002) ................................................ passim

*Stratagem Development Corp. v. Heron Int'l N.V.*,
   756 F. Supp. 789 (S.D.N.Y. 1991) .......................................................................... 13

*SWS Financial Fund A v. Salomon Brothers, Inc.*,
   790 F. Supp. 1392 (N.D. Ill. 1992) ..................................................................... 5, 9

*Teradyne, Inc. v. Hewlett-Packard Co.*,
   1991 WL 239940, *4 (N.D. Cal. 1991) ............................................................... 13

*Weiner v. Rollform Inc.*,
   744 F.2d 797 (Fed. Cir. 1984) ............................................................................... 8

*Westinghouse Electric Corp. v. Kerr-McGee Corp.*,
   580 F.2d 1311 (7th Cir. 1978) ............................................................................. 13

## **Rules**

Ill. Rule Prof. Conduct 1.7 ........................................................................................ 1

N.D. Ill. LR 83.51.7 .................................................................................................. 8

## **Other Authorities**

*ABA Comm. on Ethics and Prof. Responsibility*, Formal Op. 92-367 (1992) .............................. 15

*ABA Comm. on Ethics and Prof. Responsibility*, Formal Op. 95-390 (1995) ............................... 7

*ABA* Comment [34] to Model Rule 1.7 ...................................................................... 7

Ill. State Bar Assoc. Op. 95-15 (1996) ........................................................................ 8

N.D. Ill. LR 83.51.7 Committee Comment ................................................................. 8

## I.    **INTRODUCTION**

Defendants' motion to disqualify Oliff & Berridge, PLC ("O&B") from representing Plaintiff Renishaw plc in this matter requires this Court to engage in a two-step analysis. First, the Court must consider whether O&B's continued representation of Renishaw would constitute a prohibited conflict of interest with respect to O&B's unrelated representation of two of Defendants' sister (co-subsidiary) companies. Second, if the Court finds a conflict, the Court must then balance the parties' respective interests to determine whether disqualification is the appropriate remedy. *Reuben H. Donnelley Corp. v. Sprint Publishing & Advertising, Inc.*, 1996 WL 99902, *2 (N.D. Ill. 1996) (citing cases); *accord Safe-T-Products, Inc. v. Learning Resources, Inc.*, 2002 WL 31386473, *2 (N.D. Ill. 2002) (Pallmeyer, J.).

As to the first step, Defendants correctly note that Illinois Rules (e.g., Ill. Rule Prof. Conduct 1.7; N.D. Ill. LR 83.51.7) provide that a lawyer should not represent a client if that representation would be directly adverse to another non-consenting client. However, Defendants erroneously assert that, by representing two of Defendants' sister companies, C. E. Johansson AB/Hexagon Metrology Nordic AB ("CEJ") and Leica Geosystems AG ("Leica"), in matters unrelated to this lawsuit, O&B thereby represents an entire Hexagon Group of companies ("Hexagon Group" or "HG"), including Defendants, numerous other co-subsidiaries, and the parent company, Hexagon AB, that fairly recently acquired them. (*See* Defs. Br. 7-8, 10-11, and Ex. 2). Moreover, Defendants fail to demonstrate a <u>directly</u> adverse effect on the Hexagon Group from O&B's representation of Renishaw in this matter, aside from a conclusory contention that O&B has breached an alleged duty of loyalty to the Hexagon Group.

Defendants endeavor to boot-strap O&B's unrelated representations of CEJ and Leica to O&B's alleged representation of HG by arguing that CEJ, Leica, Defendants TESA SA ("TESA") and Hexagon Metrology, Inc. ("HMI"), and their parent company are a single, unitary entity for conflict purposes. However, in making that argument, Defendants rely on case law primarily involving concurrent representations of and against parent and subsidiary companies, rather than representations of and against co-subsidiary ("sister") companies as in this case. Moreover, Defendants do not (and cannot) demonstrate the complete identity of operations and management among CEJ, Leica, TESA, HMI, and their parent company that would be required to establish that they are a single, unitary entity.

1

Nor is there any tension between Renishaw's irreparable harm arguments and its arguments in opposing Defendants' disqualification motion, as Defendants contend. The fact that the Hexagon parent company may own and act to control its subsidiaries to Renishaw's detriment is a very different issue from whether the operations of the various Hexagon companies are completely integrated for conflict purposes. Indeed, the idea that "common ownership and control" necessarily causes adverse effect, and hence conflict of interest, has been rejected. *See Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 264, 268 (D. Del. 1980), discussed in Defendants' cited case of *Ramada Franchise System, Inc. v. Hotel of Gainesville Assocs.*, 988 F. Supp. 1460, 1464-65 (N.D. Ga. 1997).

Thus, as universally recognized in the pertinent Illinois and other case law and ABA and ISBA opinions and commentary discussed below, it was permissible for O&B to accept representation of Renishaw in this matter adverse to co-subsidiaries of CEJ and Leica. Moreover, under the second prong of the requisite analysis referenced above, which Defendants wholly ignore in stating that "the only issue here" is the alleged integrated nature of the Hexagon Group (Defs.' Br. at 10), O&B should not be disqualified from representing Renishaw in this case even if a conflict is found to exist. *Donnelly* at *4. Balancing the interests of the parties, Renishaw's interest in continuing with O&B's representation greatly outweighs Defendants' alleged interests. O&B has openly and publicly represented Renishaw with respect to its patent and other intellectual property matters for more than 25 years. Ex. 1, Oliff Decl. ¶ 11. Moreover, discovery in connection with the pending preliminary injunction proceeding is well under way, and Renishaw would be greatly prejudiced by having to substitute counsel at this stage. By contrast, given the limited and disparate nature of O&B's representations of CEJ and Leica, there is no probability of improper use of any confidential information or breach of any duty of loyalty by O&B. *See* Ex. 1, Oliff Decl. ¶¶ 13-28; Ex. 2, Short Decl. ¶¶5-14; Ex. 3, Muffo Decl. ¶¶5-14.

Accordingly, and given that disqualification is a drastic measure which courts should hesitate to impose, especially in this age of constant merger and acquisition activity, *Donnelley* at *2 and *4; *Safe-T-Products* at *2, O&B should not be disqualified from representing Renishaw in this case. Rather, Defendants' motion for disqualification should be denied.

2

## II.　　COUNTER-STATEMENT OF FACTS

### A.　　The Hexagon Group Is Not A Unitary Entity For Conflict Purposes

Hexagon AB entered the metrology field in approximately 2001 by acquiring Brown & Sharpe (which itself owned TESA) and renaming it as Hexagon Metrology, Inc. In 2002, Hexagon AB then acquired CEJ and later renamed it Hexagon Metrology Nordic AB, and in 2005 Hexagon AB acquired Leica. Defs.' Br. 4 n. 3; Somerville Decl. (Dkt. Entry 12.12), ¶35; Exs. 5 and 11 hereto. Hexagon AB maintains nothing more than a standard parent-subsidiary relationship with HMI, TESA, Leica and CEJ. For instance, each of HMI, TESA, Leica, CEJ, and Hexagon AB has its own management structure. Exs. 4 and 6-11.[1] As evident from Ex. 4, there is very little overlap between the Hexagon AB management group identified in the declaration of Bo Pettersson (Defs. Ex. 1) and the management groups of any of these four subsidiaries. Indeed, the only apparent overlap is that Hexagon AB's CEO, Ola Rollen, is also the CEO and Board Chairman of Leica, and Hakan Halen and Gert Viebke are on the CEJ Board of Directors. Ex. 4.

The subsidiary companies have continued with their pre-acquisition lines of business, operating in the separate respective facilities in which they operated prior to their acquisitions by Hexagon AB. Hexagon AB is located in Nacka Strand, Sweden. HMI is located in North Kingstown, Rhode Island, Elgin, Illinois, and Fon du Lac, Wisconsin, the locations of acquired companies Brown & Sharpe and Sheffield Measurement. TESA SA is located in Renens, Switzerland. CEJ is located in Eskilstuna, Sweden. Leica is located in St. Gallen, Switzerland. Ex. 4.

Individual, separate financial statements are prepared for HMI, TESA, Leica, and CEJ. (Defs. Br. 5). The fact that they are merged into a Group-wide financial statement for release to the public (*id.*) indicates nothing more than a typical parent-subsidiary relationship.

Finally, although Defendants contend that Hexagon legal work is centrally managed by Messrs. London and Webb, those attorneys have not had contact with O&B until the recent exchange of letters (Defs'. Exs. 10-13) alleging a conflict of interest. Ex. 1, Oliff Decl. ¶¶ 19, 25; Ex. 2, Short Decl. ¶ 12; Ex. 3, Muffo Decl ¶ 8. O&B has likewise had no contact with Messrs.

---

[1] Because Defendants have so far failed to provide this type of information in response to Renishaw's written discovery, Ex. 4 is necessarily based upon the publicly available information in Exs. 6-11.

Pettersson or Schneider. *Id.* Therefore, O&B has not had the close and regular contact with Hexagon's alleged central departments that would have placed O&B in position to have acquired sensitive and confidential business, legal, or strategic information about HG, nor would HG have had reason to think of O&B as its attorneys for all of its entities.

**B.    O&B's Representation of CEJ and Leica Has Nothing to Do With O&B's Representation of Renishaw**

**1.    Renishaw**

This case involves Renishaw patents that are directed to modular touch trigger probes. Complaint (Dkt. Entries 1 to 1.3 1); Prel. Injunction Memo. (Dkt. Entry 12, pp. 1-5, 8-9). More particularly, the case involves issues of infringement of the Renishaw patents by specific products made and sold by the named Defendants, TESA and HMI. *Id.* The asserted Renishaw patents issued between 1994 and 2000 (identifying O&B as the prosecuting attorneys), before Hexagon entered the metrology field. *Id.*

**2.    CEJ and the Mitutoyo Litigations**

Defendants are correct that O&B nominally represented CEJ in several patent infringement litigations that also involved Mitutoyo Corporation and Mitutoyo America Corporation, which are long-time O&B clients. Those litigations commenced in March 1995, long before Hexagon AB entered the metrology field, and ended in April of this year. The Mitutoyo litigations involved U.S. Patent No. 4,743,902 ("the 902 Patent"), since expired, which is directed to digital caliper technology. In contrast to modular touch trigger probes, digital calipers are hand-held length measurement devices not attached to CMMs or machine tools. Ex. 2, Short Decl. ¶ 7.

In the Mitutoyo cases, O&B was retained by, received instructions from, billed, and was paid by Mitutoyo. CEJ was merely joined as a nominal party because it held legal title to the 902 Patent that was being practiced and enforced by Mitutoyo as the exclusive licensee. Under U.S. law, CEJ was required to be named as a co-party along with Mitutoyo because it owned the patent. When CEJ later became Hexagon Metrology Nordic AB ("Hexagon Nordic"), Hexagon Nordic became a co-party to the case with Mitutoyo. O&B represented CEJ/Hexagon Nordic (or collectively "CEJ") with their complete awareness of the limited nature of O&B's representation given O&B's relationship with Mitutoyo, a direct competitor of CEJ/Hexagon Nordic. Ex. 1, Oliff Decl. ¶ 15; Ex. 2, Short Decl. ¶ 6.

4

CEJ was never actively involved in managing the Mitutoyo litigations, but had its own outside counsel to whom O&B provided status reports. O&B did not have contact in the course of the Mitutoyo litigations with Mr. Pettersson or the persons identified by Mr. Pettersson in support of Defendants' motion. (Defs'. Ex. 1). In the early years, O&B provided status reports to CEJ and its outside counsel, the Finnegan, Henderson firm of Washington, D.C. In 2003, CEJ instructed O&B to provide its status reports to CEJ's other outside counsel, Mr. Sanford Kaufman of Danbury, Connecticut. In 2004, O&B was instructed by CEJ's outside Swedish counsel, Martin Dell, to provide status reports to him, which O&B did until the Mitutoyo litigations concluded this past April. *Id.*, Oliff Decl. ¶ 19; Short Decl. ¶¶ 8-11.

CEJ, its outside counsel, and Hexagon AB (after acquiring CEJ in 2002) were all clearly aware of, and acquiesced in, O&B's joint representation of Mitutoyo and CEJ in each of the Mitutoyo litigations, even though Mitutoyo is a direct competitor of CEJ. These facts make it very unlikely that CEJ would have shared sensitive confidential or privileged information with O&B, and O&B recalls none, and certainly none that would be relevant in this unrelated case. *Id.*, Oliff Decl. ¶¶ 18, 29; Short Decl. ¶¶ 8-10, 14. O&B's representation of Mitutoyo, a competitor, would also have negated a reasonable belief by HG that O&B were its attorneys for all purposes, and that O&B represented all of HG's alleged constituent entities.

O&B does not currently represent CEJ. The last Mitutoyo litigation concluded in April 2008, before Defendants' products were obtained (Dkt. 12, ¶ 41) and the Complaint (Dkt. 1) was filed. *Id.*, Oliff Decl. ¶16; Short Decl. ¶11.[2]

### 3.    The Leica Patent Prosecution Matters

O&B's representation of Leica Geosystems AG (not Leica Geosystems USA as Defendants imply at, e.g., Defs. Ex. 1, ¶ 12) has consisted exclusively of filing and prosecuting nineteen U.S. Patent applications. The first application was filed in August 1999, and the last application was filed in April 2006. All of the applications are either patented or published, and are thus in the public domain. Ten of the applications remain pending at the U.S. Patent & Trademark Office. O&B has received no new Leica matters since April 2006, shortly after Leica

---

[2] *See SWS Financial Fund A v. Salomon Brothers, Inc.*, 790 F. Supp. 1392, 1398 (N.D. Ill. 1992) ("If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved.").

was acquired by Hexagon AB. Ex. 1, Oliff Decl. ¶¶ 21-22; Ex. 3, Muffo Decl. ¶¶ 6-7; Defs. Br. 7-8 n.7.

As admitted by Defendants, the subject matter of these Leica patent applications has nothing to do with the technology or issues involved in the instant case. Defs. Br. 8 n. 7. The Leica patent applications involve inventions directed to Global Positioning Systems (GPS), laser-based systems for capturing spatial measurement data for use in, e.g., land surveying, and dragline load monitoring. *Id.;* Ex. 3, Muffo Decl. ¶ 6.

O&B does not interact with Leica with respect to the filing and prosecution of these patent applications. Instead, O&B was retained by, receives instructions from, bills, and gets paid by various individuals at the Liechtenstein law firm of Buchel, Kaminski & Partner. O&B's communications with the Buchel firm relating to the Leica applications have exclusively involved written correspondence limited to the specific subject matter of the applications. Such correspondence has routinely addressed the payment of government fees, amendments to the patent claims, the citation of prior art, and responses to Office Actions from the U.S. Patent and Trademark Office ("PTO"). Ex. 1, Oliff Decl. ¶¶ 21-22, 25-26; Ex. 3, Muffo Decl. ¶¶ 7-9.

At no time has O&B obtained from Dr. Harmann or anyone else at the Buchel firm, or from Leica, any confidential information relevant to the instant case. For example, O&B has not received any confidential information regarding overall business, legal, or patent strategies. Indeed, at the outset of the representation, the Buchel firm confirmed that the Leica work would not conflict with O&B's representation of Mitutoyo (e.g., the CMM field, etc., with which Renishaw is also involved). Moreover the O&B attorneys appearing for Renishaw in the instant case have not performed any work in connection with the Leica patent applications. *Id.*, Oliff Decl. ¶¶ 23-24, 28-29; Muffo Decl. ¶¶ 10-14.

### C.    <u>O&B's Attempt To Resolve This Issue</u>

O&B values and respects its relationships with all of its clients, and endeavors to keep them informed. Here, as demonstrated above and in the accompanying Declaration of Mr. Oliff, CEJ and Leica (and their parent) knew, or had every reason to know, for years that O&B represents Renishaw in both prosecution and litigation. In particular, they knew, or had every reason to know, that O&B would represent Renishaw in any litigation against affiliates of CEJ and Leica. For these reasons, and because O&B was not obligated to obtain CEJ's or Leica's (or their parent's) consent as discussed below, O&B did not need to advise them in advance of

O&B's plan to file the instant case on behalf of Renishaw, which very likely would have resulted in some preemptive action (e.g., a declaratory judgment action) by Defendants against Renishaw. However, O&B promptly responded to Hexagon's letters after the suit was filed (Defs. Exs. 10-13), even offering to meet with Hexagon to discuss the matter. (Defs. Ex. 13 at 3). However, Defendants elected to file their disqualification motion without first meeting with O&B.

## III.    ARGUMENT

### A.    General Standards

Defendants' disqualification motion must be analyzed under the two-part test described in the Introduction above. As the parties seeking disqualification, Defendants bear "a heavy burden of proving facts required for disqualification." *Guillen v. City of Chicago,* 956 F. Supp. 1416, 1421 (N.D. Ill. 1997), *quoting Evans v. Artek Sys. Corp,* 715 F.2d 788, 794 (2d Cir. 1983). Disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary," given that it creates unnecessary delays, deprives a party (Renishaw here) of its chosen legal advisors, and can be misused as a technique for harassment. *Safe-T-Products,* 2002 WL 31386473 at *2 (citing Seventh Circuit and N.D. Ill. cases). This is especially so in a case such as this, where Hexagon AB systematically acquired, in recent years, the co-subsidiaries at issue here -- Leica, CEJ, TESA, and HMI (formerly Brown & Sharpe). *Donnelley,* 1996 WL 99902 at *2 and *4.

As a general matter, a lawyer for an organization is not barred from accepting representation adverse to an affiliate in an unrelated matter. *Donnelley* at *2-3 (citing *ABA Comm. on Ethics and Prof. Responsibility,* Formal Op. 95-390 (1995). As stated in *ABA* Comment [34] to Model Rule 1.7 (similar to Ill. Rule 1.7):

> [34] A lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary. See Rule 1.13(a). Thus, the lawyer for an organization is not barred from accepting representation adverse to an affiliate in an unrelated matter, unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's representation of the other client.

*Accord* Ill. State Bar Assoc. Op. 95-15 (1996) ("In conclusion, the Committee believes that the rules of professional conduct generally permit a lawyer to accept a proposed representation adverse to a subsidiary or other affiliate of an existing corporate client entity" subject to "the specific facts and circumstances of any particular situation"), cited in *Board of Managers of Eleventh Street Loftominium Assoc. v. Wabash Loftominium L.L.C.*, 376 Ill. App. 3d 185, 193 (Ill. App. Ct. 2007); N.D. Ill. LR 83.51.7 Committee Comment ("[S]imultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients").

Thus, where representation adverse to an affiliate of a client is at issue, the Court must thoroughly review all of the facts and circumstances, and strike a fair and equitable balance in determining whether the extraordinary measure of disqualification is justified.

### B.    Defendants Have Not Established A Conflict Resulting From O&B's Representation Of Renishaw In This Matter

With one exception, the cases cited by Defendants do not involve the circumstances at issue in the instant case, i.e., concurrent representation of and suit against co-subsidiaries (sister companies) with respect to unrelated subject matter.[3] Thus, Defendants' out-of-context plucking of snippets of language from those cases is inappropriate. *See, e.g., Weiner v. Rollform Inc.*, 744 F.2d 797, 806-07 (Fed. Cir. 1984). On the other hand, *Donnelley* and certain cases cited in *Ramada* do involve concurrent representation of and suit against sister companies, and therefore provide an appropriate framework for analysis.

In denying a disqualification motion, the court in *Donnelley* found that United Telephone represented by the Jones Day law firm with respect to tax matters should not be treated as a single "client" for conflict purposes with a co-subsidiary (Central Telephone Company of Illinois) that was named as a defendant in a breach of agreement suit brought by Jones Day on behalf of Plaintiff Reuben H. Donnelly Corp. *Donnelley* at *1-5. Although the court noted some overlap in the officers and directors of the two companies, the court concluded that the two companies did not share a complete identity of management and directors such that one company

---

[3] This includes the 2002 *Safe-T-Products* decision of this Court. That case involved the prior related representation by one attorney with the Brinks, Hofer firm of the very defendants that were now being sued by that same attorney and others at the Brinks, Hofer firm on behalf of plaintiffs Safe-T-Products, Inc., Classroom Products, Inc., and Extra Measures, Inc. 2002 WL 31386473 at *1. These circumstances are not involved in the instant case.

was the alter ego of the other. *Id.* at *1 and *3. The court further noted that the companies were separate legal entities operating in different states, and that there was no "disregard of corporate formalities." *Id.* The fact that the companies shared the same general counsel was considered not to be dispositive, given that the general counsel was not "an individual [who] has a personal relationship with a particular attorney who provides for all ... of that client's legal needs." *Id.*, quoting from *SWS Financial Fund A*, 790 F. Supp. at 1402.

Defendants do not accurately describe or meaningfully distinguish *Donnelley*. (Defs. Br. at 12-13 and n.10). Contrary to Defendants' Brief (12-13), *Donnelley* involves concurrent representation of and suit against co-subsidiaries, not representation of a subsidiary and suit against a parent. *Donnelley* at *1. Also, although *Donnelley* mentions law firm size among the reasons why conflicts are increasing, the decision is not limited to mega-firms and the principles of *Donnelley* apply regardless of size. In any event, *Donnelley*'s principles certainly apply to O&B, which has the fourth largest body of patent prosecution work of any law firm in the United States, and also has a substantial and active patent infringement litigation practice. Ex. 1, Oliff Decl., ¶ 6. Moreover, as with the Jones Day firm in *Donnelley*, the circumstances of O&B's representations of CEJ and Leica on the one hand, and Renishaw here, are such that no confidential CEJ or Leica information would have been obtained that could be used in this lawsuit to the advantage of Renishaw and the detriment of Defendants. *Donnelley* at *4. Additionally, given that O&B did not have (or does not recall) contact with Messrs. London, Webb, Pettersson or Schneider in connection with the CEJ and Leica work, O&B "is less likely to feel any divided loyalty that could affect its representation." Defs. Br. at 13, quoting *Donnelley*.

Like conclusions to that of *Donnelley* were reached in three other cases denying disqualification motions under circumstances involving concurrent representation of and suit against co-subsidiaries. In *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75 (W.D. N.Y. 1996), the court found that plaintiff Alcan International was at best a "vicarious" client of the Hodgson, Russ law firm by reason of that firm's concurrent representation of co-subsidiary Alcan Rolled Products. *Id.* at 80-81. Accordingly, the court found no conflict due to the absence of a substantial relationship between the subject matters of the firm's representations of Alcan Rolled Products and the defendant in Alcan International's lawsuit.

Likewise, in *Apex Oil Co. v. Wickland Oil Co.*, 1995 WL 293944 (E.D. Cal. 1995), the court concluded that two co-subsidiaries were not a single client even though they were managed by the same legal department. *Id.* at *2. In reaching the conclusion that the co-subsidiary relationship between the two companies was "more attenuated than that of a parent corporation and its subsidiary," the court pointed to a number of factors that apply equally to Hexagon and its subsidiaries -- the management of the two co-subsidiaries was "mostly separate and distinct," corporate formalities were observed, the companies' places of business were in different locations, the companies had different mailing addresses, and the companies had different senior officers with two exceptions. *Id.* at *2-3. The court so concluded despite the fact that the law firm subject to the motion to disqualify, Tuttle & Taylor, was engaged by and reported to an attorney with the parent company's legal department, the court stating that it "declines to draw the inference that the corporate parent expected to be treated as the client where, except for sharing the same corporate attorney, in all other respects [the co-subsidiaries] are distinct companies." *Id.* at *3.

The same conclusion was reached in *Pennwalt*, where Dechert, Price & Rhoads ("DPR") filed suit for Pennwalt, its client of nearly 25 years, against Plough, a co-subsidiary of another company, Scholl, that DPR was concurrently representing in an unrelated matter. The court rejected the argument of an alleged violation of duty of loyalty to Scholl's affiliates (and hence alleged conflict) based on "common ownership and control" of the sister corporations by their parent company. The court chose instead to carefully sift all of the facts and circumstances under a "substantial relationship" test, ultimately finding that no confidential information had been provided by Scholl to DPR in the litigation involving Scholl's footware products that was relevant to any issue in the *Pennwalt* litigation involving athlete's foot remedies. *Id.* at 268-73.

As in these cases, Defendants have not demonstrated that Leica, CEJ, TESA, HMI, and their parent company are a single O&B client for conflict purposes. As is clear from Defendants' papers, the above Statement of Facts, and the accompanying declarations and exhibits: (1) O&B has never represented the Hexagon parent company in any matter, nor is the Hexagon parent company a party in the instant matter; (2) the Hexagon parent company maintains nothing more than a normal managerial oversight of its subsidiary companies; (3) with only a couple of exceptions, the officers and directors of Leica, CEJ, TESA and HMI are distinct from one another and from their parent company; (4) by all accounts, Leica, CEJ, TESA and HMI

maintain corporate formalities (e.g., complying with requirements of their respective places of incorporation); (5) Messrs. London, Webb, Pettersson and Schneider do not have a personal relationship with and have not directly managed O&B's work in representing Leica and CEJ; (6) O&B was retained, instructed, and paid in the Mitutoyo litigations by Mitutoyo; and (7) O&B was retained, instructed, and paid in connection with the Leica prosecution matters by the Buchel firm. These facts clearly demonstrate, in accordance with the prevailing case law, that the Hexagon Group is not a single entity for conflict purposes and that O&B did not and does not represent the Hexagon Group.

Contrary to Defendants' repeated arguments (Defs. Br. 2-3, 6-7, and 13-14), neither O&B nor Renishaw has made any statements supporting Defendants' positions here. Nor is there any inconsistency between Renishaw's complaint and preliminary injunction motion papers and the positions herein opposing Defendants' motion to disqualify O&B. O&B and Renishaw have correctly noted in Renishaw's complaint and preliminary injunction motion papers that TESA and HMI operate as part of the Hexagon Metrology Group of Hexagon AB, and that Hexagon acquired and thereby exercises ownership and control of several longstanding Renishaw customer companies, including Brown & Sharpe and Sheffield. As noted above with reference to the *Pennwalt* and *Ramada* cases, however, that "common ownership and control" does not amount to the complete integration of Leica, CEJ, TESA, HMI, and their parent company required to create a conflict of interest resulting from O&B's representation of Renishaw. Thus, contrary to Defendants' unfounded argument (Defs. Br. 3, 14), O&B need not "repudiate a key part of Renishaw's irreparable harm theory," or "argu[e] a position contrary to its client's best interest," in opposing Defendants' disqualification motion.[4]

Defendants' arguments with respect to Dr. Harmann (Defs. Br. 8, 12, and 13) are equally inaccurate and misplaced, and hence not dispositive. O&B did not identify Dr. Harmann "as an employee of Hexagon and TESA SA with knowledge relevant to this case," or as a witness to be examined. Rather, in response to Defendants' written interrogatory regarding the December 2007 notification to Hexagon of the 005 Patent (Defs. Ex. 3, pp. 5-8), Renishaw stated that

---

[4] While these points apply to Mr. Somerville's Declaration submitted in support of Renishaw's preliminary injunction motion, it is also noted here that n.2 of Mr. Somerville's Declaration ("Hexagon AB and its Hexagon Metrology group, including Hexagon Metrology, Inc.") simply serves to clarify the background information in ¶35 of Mr. Somerville's Declaration regarding Hexagon's entry into the metrology field.

"Representatives and employees of Hexagon and TESA SA, including Bo Pettersson, Dr. Bernd-Gunter Harmann, and Giovanni Gervasio, have knowledge about Renishaw's notification to Hexagon of the 005 Patent."[5]  Nor is Dr. Harmann an O&B "client" at issue here so as to create any form of tension.  Furthermore, O&B has not obtained confidential information "regarding the Group's patent strategies" from Dr. Harmann.  Rather, O&B's written correspondence with Dr. Harmann and others at the Buchel firm has been limited to specific, unrelated Leica patent applications, all of which are now patented or published.

As previously noted, Defendants' other cited cases are inapplicable to the instant situation raised by Defendants' motion.  However, they do serve to exemplify the more extensive integration or other circumstances required to create a conflict even in their more extreme situations such as concurrent parent-subsidiary representations/suits.  Examples include: *Board of Managers*, 376 Ill. App. 3d at 186-92, 194 (current representation of parent and subsidiaries while also suing at the same time a sister company and individual defendant managing officers of the concurrently represented parent and subsidiaries); *Andrew Corp. v. Beverly Mfg. Co.*, 415 F.Supp.2d 919, 920-23 (N.D. Ill. 2006) (concurrent representation of both parties to a lawsuit, not merely affiliates of those parties); *Jones v. Rabanco, Ltd.*, 2006 WL 2237708, *4 (W.D. Wash. 2006) (concurrent representation of subsidiary and suit against parent, where parent and subsidiary shared office space and staff and otherwise had intermingled operations, the law firm in question was hired by an executive of the parent company, and the parent and subsidiary used the same key contact persons for that law firm); *Certain Underwriters at Lloyd's, London v. Argonaut Insurance Co.*, 264 F. Supp. 2d 914, 921-22 (N.D. Cal. 2003) (concurrent representation of subsidiary and suit against parent, where the parent and subsidiary were managed by the same persons and had thoroughly integrated operations with a single claims staff); *Safe-T-Products* (see footnote 3 above); *Colorpix Systems of America v. Broan Mfg. Co.*, 131 F. Supp. 2d. 331, 337 (D. Conn. 2001) (related prior representation of parent and sister of company being sued, where sued company has same VP, secretary, and general counsel as parent, and general counsel hired and directly corresponded with the subject law firm with respect to the prior representation); *Ramada*, 988 F. Supp. at 1462, 1465-66 (prior representation of sister of company being sued, where parent and two sister companies had substantially similar

---

[5] Mr. Jackson's December 13, 2007 letter to Messrs. Pettersson and Harmann (Defs. Br. at 7 and Ex. 4) was answered by Mr. Gervasio, not by Dr. Harmann or the Buchel firm.  (See Ex. 12).

management personnel and shared the same headquarters facility; disqualification motion nonetheless denied); *Teradyne, Inc. v. Hewlett-Packard Co.*, 1991 WL 239940, *4 (N.D. Cal. 1991) (concurrent representation of subsidiary (Apollo) and suit against parent (HP), where most of Apollo's business was converted to being part of HP itself, most of Apollo's employees were now HP employees, only one of Apollo's departments remained separate from HP, and the law firm in question was retained by, reported directly to, sent its bills to, and was paid by HP); *Stratagem Development Corp. v. Heron Int'l N.V.*, 756 F. Supp. 789, 790-92 (S.D.N.Y. 1991) (representation of company while suing both parent and co-subsidiary, where award against company would directly affect the bottom line of the sued parent); *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318-19 (7th Cir. 1978) (concurrent representation of industry group while suing some of its members in related action).  As is self-evident, the instant factual circumstances are nowhere near as compelling as the circumstances of these inapposite cases cited by Defendants.

Thus, Defendants have not established that Leica, CEJ, TESA, HMI, and their parent company are a single, unitary entity, much less that they are a single O&B client for conflict purposes.  Accordingly, Defendants' motion should be denied because Defendants have not demonstrated the existence of a conflict of interest resulting from O&B's representation of Renishaw in the instant matter.

### C.    A Balancing Of The Parties' Interests Militates Against Disqualification Even If A Conflict Is Found

Even if this Court were to determine that a conflict exists, it is respectfully submitted that the Court should nonetheless deny Defendants' motion to disqualify because the balancing of interests between Renishaw's desire to continue with its counsel of choice and Defendants' alleged interest in the attorney-client relationship tilts dramatically in Renishaw's favor.  See *Donnelley* at *4.  This is so for at least five reasons.

First, Renishaw would suffer greatly if O&B is disqualified, given that O&B has represented Renishaw for over 25 years in both litigation and prosecution, O&B is intimately familiar with Renishaw's products and business, O&B has devoted over 1500 hours to date in preparing, filing, and proceeding with this case (Ex. 1, Oliff Decl. ¶ 30), the preliminary injunction motion proceeding and discovery are well under way, and there would be substantial expense and potential delay involved with obtaining and educating substitute counsel. *Id.*

13

Second, O&B's representations of Leica and CEJ have had nothing whatsoever to do with the subject matter of this case, and Defendants fail to demonstrate that O&B obtained any confidential information that could even possibly be used to Renishaw's advantage and Defendants' detriment. *Id.; Ramada*, 988 F. Supp. at 1465-66; *Alcan*, 176 F.R.D. at 80-81; *Pennwalt*, 85 F.R.D. at 269-74. Third, there was never an understanding between O&B and Leica, CEJ, or their parent company that O&B would not take a position adverse to co-subsidiaries of Leica and CEJ (or the parent companies for that matter), and indeed those companies understood that O&B was providing limited representation to CEJ and Leica in view of O&B's representation of Mitutoyo. *See* Comment [34] to ABA Model Rule 1.7 and related bar opinions discussed above. Fourth, there is absolutely no basis for Defendants' conclusory argument that O&B's duty of loyalty to Leica and CEJ is jeopardized by O&B's representation of Renishaw in this unrelated matter. Fifth, stopping TESA and HMI from selling their recently introduced, infringing TesaStar-mp modular probe systems will not have a <u>direct</u> adverse effect on their parent or sister companies, and certainly not a substantial direct adverse effect given that those systems are new and represent only one product line among many products sold by Hexagon-owned companies.

Under the circumstances, O&B and Renishaw believe that no precautions are necessary to protect Defendants' interests. However, if the Court feels otherwise, it is respectfully submitted that the Court should fashion a remedy short of disqualification of O&B. For example, the Court could instruct O&B to request the Buchel firm to transfer responsibility for the Leica patent prosecution matters to another law firm. *See Gould, Inc. v. Mitsui Mining and Smelting Co.*, 738 F. Supp. 1121, 1126-27 (N.D. Ohio 1990); *Pennwalt*, 85 F.R.D. at 272. This would cause little if any prejudice to Leica or its parent given that the ten patent applications pending with O&B are all published and the Buchel firm has not sent a new Leica matter to O&B for over two years (and now has several other law firm(s) engaged in Leica prosecution as reflected in public records of the U.S. PTO).[6] Alternatively, the Court could instruct O&B to erect an "institutional mechanism" to continue to screen attorneys working on the pending Leica patent prosecution matters from the attorneys working on behalf of Renishaw in the instant case. *Safe-T-Products*, 2002 WL 31386473 at *7 (single attorney screened without disqualifying law

---

[6] These include Workman Nydegger of Salt Lake City, Utah; Rothwell, Figg, Ernst & Manbeck of Washington, D.C.; and Rankin, Hill, Porter & Clark of Willoughby, Ohio. (See Ex. 13).

firm). If deemed necessary, although he is not a "client" at issue here, the Court might also consider precluding O&B from deposing or examining Dr. Harmann on behalf of Renishaw in this matter. See *ABA Comm. on Ethics and Prof. Responsibility*, Formal Op. 92-367, text at footnotes 17 and 18 (1992), cited by Defendants (Defs. Br. 12). Tailored remedies such as these, short of disqualification, would constitute fairer remedies that are consistent with the judicial disfavor toward disqualification.

## IV.    **CONCLUSION**

For the reasons stated herein, Defendants' motion to disqualify Oliff & Berridge from its representation of Renishaw plc in this case should be denied.


Dated: August 13, 2008.                          RENISHAW PLC

                                        By:    /s/ John W. O'Meara
Patrick G. Burns                               James A. Oliff
(pburns@gbclaw.net)                            (joliff@oliff.com)
B. Joe Kim                                     Edward P. Walker
(jkim@gbclaw.net)                              (ewalker@oliff.com)
GREER, BURNS & CRAIN                           John W. O'Meara
300 South Wacker Drive                         (jomeara@oliff.com)
Suite 2500                                     Aaron L. Webb
Chicago, Illinois   60606                      (awebb@oliff.com)
Telephone: (312) 360-0080                      John A. Radi
Facsimile: (312) 360-9315                      (jradi@oliff.com)
                                               OLIFF & BERRIDGE, PLC
                                               277 South Washington Street
                                               Suite 500
                                               Alexandria, Virginia   22314
                                               Telephone: (703) 836-6400
                                               Facsimile: (703) 836-2787

                                               Attorneys for Plaintiff Renishaw plc

15

## CERTIFICATE OF SERVICE

I hereby certify that on this day I caused the attached Memorandum in Opposition to Defendants' Motion to Disqualify Oliff & Berridge, PLC From Its Representation of Renishaw plc to be served by ECF under Local Rule 5.2 and first class mail upon:


Alan L. Barry
Michael J. Abernathy
Patricia K. Schmidt
Jason A. Engel
Marron A. Mahoney
BELL, BOYD & LLOYD LLP
70 W. Madison Street, 3100
Chicago, IL 60602
(312) 372-1121
abarry@bellboyd.com.
pschmidt@bellboyd.com
jengel@bellboyd.com

Attorneys for Defendants TESA SA
and Hexagon Metrology, Inc.


/s/ John W. O'Meara
Attorney for Plaintiff Renishaw plc


Dated: August 13, 2008

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENISHAW PLC,<br><br>     Plaintiff,<br><br>    v.<br><br>TESA SA, and<br>HEXAGON METROLOGY, INC. (also dba<br>TESA USA, BROWN & SHARPE, INC.,<br>and SHEFFIELD MEASUREMENT, INC.),<br><br>     Defendants. | Case No. 08cv3485<br><br>Judge: Pallmeyer<br>Magistrate Judge: Nolan<br><br>**Jury Trial Demanded** |

## DECLARATION OF JAMES A. OLIFF

NOW COMES James A. Oliff, who declares to the best of his knowledge, information and belief that:

1.  My name is James A. Oliff and I am an attorney and founding Member of the law firm of Oliff & Berridge, PLC ("O&B"), counsel for Plaintiff Renishaw plc ("Renishaw") in the above-referenced matter.  I am over eighteen years of age and am otherwise competent to attest to the matters set forth herein.

## BACKGROUND

2.  I hold a Bachelor of Science degree in Aeronautical Engineering from the University of Maryland.  I also hold a Juris Doctor degree from the Georgetown University Law Center.

3.  I have been a patent attorney registered to practice before the United States Patent and Trademark Office ("PTO") since 1974.

4.      I am a member in good standing of the Maryland and Virginia Bars.  I am also admitted to practice before the U.S. Supreme Court and several U.S. district and appellate courts.

**OLIFF & BERRIDGE, PLC ("O&B")**

5.      I founded O&B, then known as Parkhurst & Oliff, on January 1, 1983.  From the mid-1970's through December 31, 1982, I was an attorney with the Arlington, Virginia law firm of Stevens, Davis, Miller & Mosher, and I was a partner in that law firm for the last several years of that time period.  Prior to that, I worked for the PTO, first as an Examiner and ultimately as a clerk to the Chairman of the PTO Board of Patent Appeals and Interferences.

6.      Since its inception, O&B has grown to now include approximately 60 attorneys, including 13 Members, and over 130 additional employees.  According to *Intellectual Property Today* (March 2008), O&B has the fourth largest body of patent prosecution work of any law firm in the United States (in terms of annual number of issued patents).  As is evident from public records, O&B also has a substantial and active patent infringement litigation practice, with cases currently pending in many U.S. District Courts.  O&B has its principal office in Alexandria, Virginia, and a satellite office in St. Louis, Missouri.  See www.oliff.com.

**THE O&B/MITUTOYO RELATIONSHIP**

7.      Mitutoyo Corporation of Japan is one of the world's largest manufacturers of measuring equipment, including, for example, coordinate measuring machines ("CMMs") and digital calipers.  Mitutoyo Corporation has a U.S. subsidiary, Mitutoyo America Corporation.

8.      O&B and I have been representing Mitutoyo for over 20 years and continue to represent Mitutoyo today.

9.      I understand that, in the measuring equipment industry and the intellectual property law community, it is well known that Mitutoyo manufactures and sells measuring

equipment, including CMMs and digital calipers, and that O&B has been representing Mitutoyo with respect to both patent prosecution and litigation for many years. For example, O&B appears as Mitutoyo's attorneys on the face of Mitutoyo's many U.S. patents. By way of further example, in 1995 O&B assisted Mitutoyo in a negotiation with Brown & Sharpe (now Hexagon Metrology, Inc.) regarding digital calipers.

## THE O&B/RENISHAW RELATIONSHIP

10.     Renishaw was founded in 1973 by David McMurtry and John Deer for the purpose of commercializing Mr. McMurtry's invention of the touch trigger probe. To the best of my knowledge, Renishaw is today the world's largest manufacturer of touch trigger probes and accessories for use on CMMs and computer-controlled, automated machine tools.

11.     I have personally worked with Renishaw, including Messrs. McMurtry and Deer, since well prior to the inception of O&B. In fact, I was involved with prosecuting Mr. McMurtry's early U.S. patent applications directed to his touch trigger probe, which applications were filed in the United States beginning in 1973 with priority to corresponding patent applications filed in the United Kingdom in the 1972-73 time frame. O&B has been representing Renishaw, including Messrs. McMurtry and Deer, since the inception of the firm 25 years ago, and continues to represent them today.

12.     I understand that, in the measuring equipment industry and the intellectual property law community, it is well known that Renishaw manufactures and sells touch trigger probes and accessories for CMMs and computer-controlled, automated machine tools, and that O&B has been representing Renishaw with respect to both patent prosecution and litigation for many years. By way of example, CEJ is a long-time Renishaw customer. Also, O&B appears as Renishaw's attorneys on the face of Renishaw's many U.S. patents, including the patents asserted

in the captioned case. Additionally, given the close historical supplier-customer relationships

between Renishaw and Sheffield and Brown & Sharpe, employees of one or both of those

companies have assisted O&B over the years in O&B's representations of Renishaw in various

patent litigations. Examples of reported decisions involving O&B's representation of Renishaw

with respect to touch trigger probes include, for example: (1) *Rolls-Royce Limited and Renishaw*

*plc v. GTE Valeron Corp.*, 625 F. Supp. 343 (E.D. Mich. 1985); (2) *Rolls-Royce Limited and*

*Renishaw plc v. GTE Valeron Corp.*, 800 F.2d 1101 (Fed. Cir. 1986); (3) *Carl Zeiss Stiftung v.*

*Renishaw plc*, 740 F. Supp. 1038 (S.D.N.Y. 1990); (4) *Carl Zeiss Stiftung v. Renishaw plc*, 945

F.2d 1173 (Fed. Cir. 1991); (5) *Renishaw plc v. Marposs Societe A 'per Azione*, 974 F. Supp.

1056 (E.D. Mich. 1997); (6) *Renishaw plc v. Marposs Societe 'per Azione*, 158 F.3d 1243 (Fed.

Cir. 1998).

## THE MITUTOYO LITIGATIONS

13.     I have reviewed the Declaration of Darle M. Short submitted herewith. I agree

with Mr. Short's statements with respect to the Mitutoyo litigations to the extent that they are

within my personal knowledge, and I am aware of nothing that would contradict any of the

statements made by Mr. Short with respect to the Mitutoyo litigations. I simply add here a few

corroborating or additional statements.

14.     As noted by Mr. Short, the first Mitutoyo litigation was Civil Action No. 95-2014

filed in the Central District of California in 1995 by Central Purchasing, Inc. against Mitutoyo

and C.E. Johansson AB ("CEJ"), seeking a declaratory judgment of invalidity of U.S. Patent No.

4,743,902 ("the 902 Patent"). Mitutoyo was the exclusive licensee of that patent and CEJ was

the patent owner.

15.    Even prior to the 1995 suit by Central Purchasing, O&B had been representing Mitutoyo in connection with efforts to enforce the 902 Patent against its competitors.  When Central Purchasing sued Mitutoyo in 1995, O&B was retained by Mitutoyo to represent it in that litigation.  To avoid imposition or cost to CEJ, O&B also represented CEJ, the patent owner, with CEJ's full awareness of O&B's long relationship with Mitutoyo, a CEJ direct competitor.  However, O&B received instructions from, billed, and was paid by Mitutoyo.

16.    O&B continued to represent Mitutoyo and the 902 Patent owner CEJ, which subsequently became Hexagon Metrology Nordic AB (hereinafter collectively "CEJ"), through the course of the litigations identified by Mr. Short until the final matter was concluded in April 2008.  There currently are no active matters, litigation or otherwise, involving the now expired 902 patent or CEJ that O&B is responsible for.  Thus, O&B no longer represents CEJ.

17.    From prior to 1995 until 1996, the day-to-day work in the Mitutoyo pre-litigation and litigation matters was primarily handled by various O&B attorneys under my general supervision.  From early 1996 to April 2008, Mr. Short had the primary day-to-day responsibility for the Mitutoyo litigations, again under my general supervision.

18.    I do not recall any confidential information that I or O&B received from CEJ or its parent company in connection with the Mitutoyo litigations, and certainly no confidential information that would be relevant outside the context of the Mitutoyo litigations.  I do not believe that I or anyone else at O&B received any such confidential information in connection with the Mitutoyo litigations.

19.    I do not believe that I or anyone else at O&B working on the Mitutoyo litigations ever met or communicated with any of the following in connection with the Mitutoyo litigations: any attorney from the Liechtenstein law firm of Buchel, Kaminski & Partner, Dr. Bernd-Gunter

Harmann, Frederick London, Collin Webb, Ola Rollen, Gert Viebke, Hakan Halen, Bo

Pettersson, Ulf Lang, William Gruber, or Dr. Klaus Schneider. Moreover, aside from

Dr. Harmann and others at the Buchel firm, I do not believe that I otherwise have met or know

any of the above-named individuals. To the best of my knowledge, my and O&B's first

encounter with Messrs. London and Webb was in connection with a series of letters in advance

of Defendants' disqualification motion in the captioned matter (letters attached as Exs. 10-13

thereto).

## LEICA GEOSYSTEMS AG U.S. PATENT APPLICATIONS

20.    I have reviewed the Declaration of Patrick T. Muffo submitted herewith. I agree

with Mr. Muffo's statements with respect to O&B's work on U.S. patent applications for Leica

Geosystems AG ("Leica") to the extent that those statements are within my personal knowledge,

and I am not aware of any information that would contradict any of Mr. Muffo's statements

regarding O&B's work in connection with Leica's U.S. patent applications. I simply add here a

few corroborating or additional statements.

21.    O&B has been responsible for prosecuting nineteen U.S. patent applications on

behalf of Leica since 1999. The first Leica patent application was filed by O&B in August 1999,

and the last Leica patent application was filed by O&B in April 2006. These patent applications

are as described by Mr. Muffo.

22.    O&B was retained by the firm of Buchel, Kaminski & Partner to file and

prosecute the Leica U.S. patent applications. O&B also works with the Buchel firm and its

various attorneys, including Dr. Harmann, for a variety of other clients having no relation to

Leica or Hexagon. I understand that O&B has not received a new patent application from the

Buchel firm for Leica since April 2006, shortly after Leica was acquired by Hexagon. I also understand that all O&B bills for the Leica work have been sent to and paid by the Buchel firm.

23.     At the outset of O&B's representation of Leica through the Buchel firm, the Buchel firm confirmed that the Leica work would not conflict with O&B's representation of Mitutoyo (e.g., the CMM field, etc., with which Renishaw is also involved). Thus, both the Buchel firm and Leica knew from the outset, and Hexagon AB knew when it acquired Leica in 2005, that O&B's representation of Leica was limited and that O&B represented, and planned to continue to represent, other clients in the measuring equipment industry.

24.     To the best of my knowledge, (a) I have not been substantively involved in any of the Leica U.S. patent applications; (b) I have not signed any correspondence with the Buchel firm, and have not signed any papers filed with the PTO, with respect to the Leica applications; and (c) I have not otherwise substantively communicated with Dr. Harmann, anyone at the Buchel firm, or anyone at Leica or Hexagon with respect to the Leica patent applications. In accordance with O&B practice, letters were signed by others in my name, and my name appears on PTO papers, as the O&B Member through whom the work originated.

25.     I do not believe that I or anyone else at O&B working on the Leica U.S. patent applications ever met or communicated with any of the following in connection with the Leica U.S. patent applications: Dr. Harmann or any other attorney from the Liechtenstein law firm of Buchel, Kaminski & Partner (aside from the written correspondence described by Mr. Muffo), Frederick London, Collin Webb, Ola Rollen, Gert Viebke, Hakan Halen, Bo Pettersson, Ulf Lang, William Gruber, or Dr. Klaus Schneider. Moreover, aside from Dr. Harmann and others at the Buchel firm, I do not believe that I otherwise have met or know any of the above-named individuals. To the best of my knowledge, as I noted above, my and O&B's first encounter with

Messrs. London and Webb was in connection with a series of letters in advance of Defendants' disqualification motion in the captioned matter (letters attached as Exs. 10-13 thereto).

26.     Dr. Harmann and others at the Buchel firm have visited O&B on occasion, but, to the best of my knowledge, no one, including myself, from O&B has ever visited the Buchel firm. To the best of my knowledge, those visits to O&B by Dr. Harmann and others at the Buchel firm had nothing to do with Leica or Hexagon and involved no discussions with respect to Leica or Hexagon.

27.     To the best of my knowledge, I have never reviewed any confidential information with respect to the Leica patent applications that may have been conveyed by the Buchel firm to attorneys at O&B working on those patent applications.  Moreover, to the best of my knowledge and belief, neither I nor anyone else at O&B has received from Dr. Harmann, the Buchel firm, Leica, or its parent company any confidential information that would be relevant to the captioned case.  For example, I do not believe that I or anyone else at O&B received any confidential information pertaining to Leica's or Hexagon's overall business, legal, or patent strategies.

**RENISHAW V. TESA SA**

28.     I have appeared in the captioned case as an attorney for Renishaw.  The captioned case involves issues of infringement of Renishaw patents directed to modular touch trigger probes by specific products made and sold by Defendants TESA SA and Hexagon Metrology, Inc.

29.     I do not recall any confidential information concerning Leica, CEJ, or their parent company.  I do not believe that I possess any such confidential information, and certainly not any such confidential information that would be relevant or useful in the captioned case.  I have not

communicated to Renishaw or to the Renishaw litigation team any confidential information concerning Leica, CEJ, or their parent company.

30.    O&B has devoted over 1500 hours to date in preparing, filing, and proceeding with the captioned case on behalf of Renishaw.

31.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___8/13/08___

James A. Oliff

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENISHAW PLC, ) | |
| ) | Case No. 08cv3485 |
| Plaintiff, ) | |
| ) | Judge: Pallmeyer |
| v. ) | Magistrate Judge: Nolan |
| ) | |
| TESA SA, and ) | **Jury Trial Demanded** |
| HEXAGON METROLOGY, INC. (also dba ) | |
| TESA USA, BROWN & SHARPE, INC., ) | |
| and SHEFFIELD MEASUREMENT, INC.), ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF DARLE M. SHORT

NOW COMES Darle M. Short, who declares to the best of his knowledge, information, and belief that:

1.    My name is Darle M. Short and I am an attorney Of Counsel to the law firm of Oliff & Berridge, PLC ("O&B"), counsel for Plaintiff Renishaw plc ("Renishaw") in the above-referenced matter.  I am over eighteen years of age and am otherwise competent to attest to the matters set forth herein.

## BACKGROUND

2.    I hold a Bachelor of Science degree with High Honors in Civil Engineering from Iowa State University.  I also hold a Juris Doctor degree from George Washington University National Law Center.

3.    I have been a patent attorney registered to practice before the United States Patent and Trademark Office ("PTO") since 1978.

4.     I am a member in good standing of the Maryland and District of Columbia Bars. I am also admitted to practice before the U.S. Supreme Court and several U.S. district and appellate courts.

## THE MITUTOYO LITIGATIONS

5.     From early 1996 until April 2008, I served as O&B litigation counsel for Mitutoyo Corporation and Mitutoyo America Corporation (collectively "Mitutoyo") in several patent infringement litigations, with the primary day-to-day responsibility therefor, including (1) *Central Purchasing, Inc. v. Mitutoyo et al.*, No. 95-2292 (D.D.C., filed 12/14/95); (2) *Mitutoyo et al. v. Chicago Brand Industrial, Inc.*, No. C99-03576 (N.D. Cal., filed 7/22/99); (3) *Mitutoyo et al. v. Central Purchasing, Inc.*, No. 03C 0990 (N.D. Ill., filed 2/10/03); (4) *Guilin Guanglu Measuring Instrument Co. v. Mitutoyo et al.*, No. 03C 00605 (D.D.C., filed 3/4/03); (5) *Central Tools, Inc. v. Mitutoyo et al.*, No. 04-CV-68S (D.R.I., filed 3/2/04); (6) *Mitutoyo et al. v. The Pep Boys - Manny, Moe & Jack*, No. 04C 2342 (N.D. Ill., filed 3/30/04); and (7) *Mitutoyo et al. v. Wholesale Tool Co.*, No. 04C 3034 (N.D. Ill., filed 4/28/04).  In this capacity, I was also generally familiar with the following preceding litigation which was transferred to D.D.C. in December 1995 and became case (1) above: (8) *Central Purchasing, Inc. v. Mitutoyo et al.*, No. 95-2014 (C.D. Cal., filed 3/29/95).

6.     The above-referenced cases each involved Mitutoyo's efforts to enforce, and competitors' efforts to invalidate, U.S. Patent No. 4,743,902 ("the 902 Patent"), now expired, which was exclusively licensed by Mitutoyo (for length measurement field of use) and owned by C.E. Johansson AB which subsequently became Hexagon Metrology Nordic AB (collectively "CEJ").  O&B also represented CEJ in those cases, which had been joined as a plaintiff (defendant in some cases) to satisfy the requirement of U.S. patent law that the patent owner be a

party to each case.  CEJ did not take any role in managing those cases, and all costs of the litigations were paid by Mitutoyo.  O&B was retained by, received instructions from, billed, and was paid by Mitutoyo.  Mitutoyo, through O&B, reimbursed CEJ for costs incurred by CEJ.

7.    The 902 Patent is directed to digital caliper technology.  Digital calipers are hand-held length measurement devices.  As illustrated below, the caliper utilizes two separable tips between which an object to be measured is placed.  The length measurement is taken between the two tips of the caliper and, in the case of a digital caliper, that distance is displayed on a small display screen.  It is my understanding that digital calipers are not attached to coordinate measuring machines ("CMMs") or machine tools.



8.    Early in its representation of CEJ, O&B communicated about the pending Mitutoyo litigations with Messrs. Carl-Erik Gustafsson, Rudolf Wiklund, and Nils Edlund of CEJ, and CEJ's outside counsel Finnegan, Henderson, Farabow, Garrett & Dunner who had prosecuted the 902 Patent.  O&B provided CEJ and Finnegan with reports of the status of the cases.  CEJ provided limited support as necessary, but I do not recall CEJ (or Finnegan) providing O&B with any confidential information, and certainly no confidential information that would be relevant outside the context of the Mitutoyo litigations.  For example, I am not aware of any instance in which I or anyone else at O&B received from CEJ or Finnegan any confidential information concerning CEJ's or Hexagon's overall business, legal, or patent strategies.

9.      In 2003, O&B was instructed by Mr. Edlund to solely communicate with Sanford

D. Kaufman of the law firm of Jones, Damia, Kaufman, Borofsky & Depaul, LLC in Danbury,

Connecticut, with respect to the Mitutoyo litigations.  As it had done with CEJ and Finnegan,

O&B provided status reports to Mr. Kaufman.  To the best of my recollection, neither

Mr. Kaufman nor anyone else at the Jones, Damia firm provided O&B with any confidential

information, and certainly no confidential information that would be relevant outside the context

of the Mitutoyo litigations.  For example, I am not aware of any instance in which I or anyone

else at O&B received from them any confidential information concerning CEJ's or Hexagon's

overall business, legal, or patent strategies.

10.     In 2004, after a very brief contact with CEJ's Mr. Per Holmberg, O&B was

instructed by Mr. Martin Dell, of the law firm of Mannheimer, Swartling, Advokatbyra of

Helsingborg, Sweden, to communicate solely with him on behalf of CEJ/Hexagon Nordic with

respect to the Mitutoyo litigations.  O&B continued to keep Mr. Dell and the Mannheimer firm

informed of developments in these cases until the last case was dismissed in April 2008, as O&B

had done in the past with CEJ, Finnegan, and Mr. Kaufman.  To the best of my recollection,

neither Mr. Holmberg, Mr. Dell, nor anyone else at the Mannheimer firm provided O&B with

any confidential information, and certainly no confidential information that would be relevant

outside the  context of the Mitutoyo litigations.  For example, I am not aware of any instance in

which I or anyone else at O&B received from them any confidential information concerning

CEJ's or Hexagon's overall business, legal or patent strategies.

11.     The Mitutoyo litigations concluded in April 2008 when the final case of *Central

Purchasing, Inc. v. Mitutoyo et al.*, No. 03C 0990 (N.D. Ill.), was dismissed.  There are currently

no active matters, litigation or otherwise, involving the now expired 902 Patent or CEJ that O&B is responsible for. Thus, as far as I am aware, O&B no longer represents CEJ.

12.    I do not believe that I or anyone else at O&B working on the Mitutoyo litigations ever met or communicated with any of the following in connection with the Mitutoyo litigations: any attorney from the Liechtenstein law firm of Buchel, Kaminski & Partner, Dr. Bernd-Gunther Harmann, Frederick London, Collin Webb, Ola Rollen, Gert Viebke, Hakan Halen, Bo Pettersson, Ulf Lang, William Gruber, or Dr. Klaus Schneider. Moreover, I do not believe that I otherwise have met or know any of the above-named individuals.

**RENISHAW V. TESA SA**

13.    I have had no involvement in the captioned case as an attorney for Renishaw. My only involvement has been to provide this Declaration. I have not had access to any confidential information of Renishaw's, nor have I had access to any confidential information of Defendants Hexagon Metrology, Inc. and Tesa SA or their parent company.

14.    I generally understand that the captioned case involves issues pertaining to touch trigger probes used on coordinate measuring machines (CMMs). From my knowledge of the Mitutoyo litigations, I believe that O&B did not receive any confidential information in connection with the Mitutoyo litigations, and certainly no confidential information that would be relevant to or useful in the captioned case.

15.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on ~~August 13 2008~~

~~Darle M. Short~~

Darle M. Short

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENISHAW PLC, ) | |
| ) | Case No. 08cv3485 |
| Plaintiff, ) | |
| ) | Judge: Pallmeyer |
| v. ) | Magistrate Judge: Nolan |
| ) | |
| TESA SA, and ) | **Jury Trial Demanded** |
| HEXAGON METROLOGY, INC. (also dba ) | |
| TESA USA, BROWN & SHARPE, INC., ) | |
| and SHEFFIELD MEASUREMENT, INC.), ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF PATRICK T. MUFFO

NOW COMES Patrick T. Muffo, who declares to the best of his knowledge, information, and belief that:

1.      My name is Patrick T. Muffo and I am an associate attorney with the law firm of Oliff & Berridge, PLC ("O&B"), counsel for Plaintiff Renishaw plc ("Renishaw") in the above-referenced matter.  I am over eighteen years of age and am otherwise competent to attest to the matters set forth herein.

## BACKGROUND

2.      I hold a Bachelor of Science degree with Honors in Materials Science & Engineering from the Virginia Polytechnic Institute & State University.  I also hold a Juris Doctor degree from the Franklin Pierce Law Center.

3.      I have been a patent attorney registered to practice before the United States Patent and Trademark Office ("PTO") since 2007.

4.    I am a member in good standing of the Virginia Bar.

## LEICA GEOSYSTEMS AG U.S. PATENT APPLICATIONS

5.    Since joining O&B in August 2007, I have been involved with day-to-day work on a number of U.S. patent applications for Leica Geosystems AG ("Leica") that are currently pending before the PTO. I have performed this work under the supervision of my assigned mentor, Randi Isaacs. Therefore, I am familiar with the files of these pending Leica patent applications and the information contained therein. I have also recently reviewed these and all of the other Leica patent application files maintained by O&B.

6.    O&B has been responsible for prosecuting nineteen U.S. patent applications on behalf of Leica since 1999. The first Leica patent application was filed by O&B in August 1999, and the last Leica patent application was filed by O&B in April 2006. Ten of these patent applications remain pending at the PTO. These patent applications are generally directed to Global Positioning Systems ("GPS"), laser-based systems for capturing spatial measurement data for use in, e.g., land surveying, and dragline load monitoring. To date, all of the Leica U.S. patent applications have either issued as a U.S. patent or been published under U.S. patent law. In each case, the contents of the patent application file history maintained by the PTO have been made public, including PTO Office Actions, any Amendments or other responses to those Office Actions on behalf of Leica, Examiner interview records, citations of prior art, and other communications with the PTO.

7.    I understand that O&B was retained by the Liechtenstein law firm of Buchel, Kaminski & Partner to file and prosecute these Leica U.S. patent applications. O&B's communications with respect to these patent applications have not been with Leica directly, but instead have been exclusively by written correspondence with various attorneys of the Buchel

firm, including Dr. Bernd-Gunther Harmann, Susanne Kaminski, Tobias M. Pischetsrieder, and Margot Cooper. All of O&B's bills have been sent to the Buchel firm, and I understand that those bills have been paid by the Buchel firm. O&B has not received a new patent application from the Buchel firm for Leica since April 2006.

8.    Based on my review of each Leica U.S. patent application file that O&B is responsible for, I found no evidence of any correspondence or other communication with any individuals by the names of Frederick London, Collin Webb, Ola Rollen, Gert Viebke, Hakan Halen, Bo Pettersson, Ulf Lang, or William Gruber.

9.    Although Klaus Schneider was a named inventor on one of the Leica patent applications, provided, through the Buchel firm, a signed Declaration and signed Powers of Attorney, and witnessed the assignment by the inventors of another one of the patent applications, I found no evidence in the O&B Leica files of any correspondence or other communication with Klaus Schneider.

10.    My review of the Leica files also confirmed that no confidential information was conveyed to O&B that pertained to Leica's overall business, legal, or patent strategies. The correspondence with the Buchel firm was instead directed to routine patent prosecution matters that related to the particular applications individually, including recommendations and instructions for responding to PTO Office Actions, paying required fees, and citing prior art.

11.    My review of the Leica U.S. patent application files also disclosed that Mr. Oliff never signed any correspondence with the Buchel firm, and never signed any papers filed with the PTO, with respect to any such applications. In accordance with O&B practice, letters were signed by others in Mr. Oliff's name, and Mr. Oliff's name appears on PTO papers, as the O&B Member through whom the work originated.

**RENISHAW v. TESA SA**

12.     I have had no involvement in the captioned case as an attorney for Renishaw. My only involvement has been to review the Leica U.S. patent application files at O&B and provide this Declaration. I have not had access to any confidential information of Renishaw's, nor have I had access to any confidential information of Defendants Hexagon Metrology, Inc. and TESA SA or their parent company.

13.     I generally understand that the captioned case involves issues pertaining to touch trigger probes used on coordinate measuring machines (CMMs). From my review and knowledge of the Leica U.S. patent application files, I believe that O&B did not receive any confidential information in connection with those Leica matters that would be relevant to or useful in the captioned case.

14.     Based on my review of O&B's Leica files, I did not see any indication that any member of O&B's Renishaw litigation team, *i.e.,* James A. Oliff, Edward P. Walker, John W. O'Meara, Aaron L. Webb, or John A. Radi, performed any work in connection with any Leica U.S. patent application matter at any time.

15.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___8/13/08___                    _____
                                             Patrick T. Muffo

# EXHIBIT 4

**Plaintiff's Exhibit 4**

**Officers, Directors, and Addresses**
**For Hexagon AB, TESA SA, Hexagon Metrology Inc.,**
**Leica Geosystems AG, and C.E. Johansson AB/Hexagon Metrology Nordic AB**

| Company Name/Address | Executive Officers | Board of Directors | Source of Information |
|---|---|---|---|
| Hexagon AB<br>Cylinderragen 12<br>SE-131 26 Nacka Strand<br>Sweden | Ola Rollen, CEO and Pres.<br>Hexagon Metrology<br>Hakan Halen, CFO<br>Gert Viebke, VP<br>Sara Kraft, Senior VP<br>Hans Carlson, Pres.<br>Hexagon Engr.<br>Lars Olofsson, Pres.<br>Hexagon Polymers<br>George Brunstam, CEO<br>Hexagon Polymers | Melker Schorling, Chairman<br>Mario Fontana<br>Ulf Henriksson<br>Maths-Olov Sundqvist<br>Ola Rollen<br>Gun Nilsson | Hexagon Annual Report.<br>Westlaw: Hoovers<br>Westlaw<br>(See Plaintiff's Exs. 6 and 7) |
| Tesa SA<br>Bugnon 38<br>CH-1020<br>Renens<br>Switzerland | Maria Ferisse, CEO<br>Francois Gabella, Gen. Mgr. | Francois Gabella, Chairman<br>Maria Ferisse<br>Antonio Aparicio<br>Catherine Selva, Secretary<br>Ian Nottage<br>Norbert Hanke | Westlaw: D&B<br>(See Plaintiff's Ex. 8) |
| Hexagon Metrology, Inc.<br>1558 Todd Farm Dr.<br>Elgin, IL  60123<br><br>250 Circuit Dr.<br>North Kingstown, RI  02852<br><br>660 S. Military Rd.<br>Fond du Lac, WI  54935 | William Gruber, Pres & CEO<br>Mark Dellaney, V.P. & CFO<br>Charles Xynellis, Controller<br>Jack Rossignol, Vice Pres.<br>Maria Shuck, Secretary | William Gruber<br>Mark Dellaney<br>Charles Xynellis<br>Jack Rossignol<br>Maria Shuck | Westlaw: D&B<br>Dialog: D&B<br>www.smallbusiness.dnb.com<br>(See Plaintiff's Ex. 9) |

2

| Company Name/Address | Executive Officers | Board of Directors | Source of Information |
|---|---|---|---|
| Leica Geosystems AG<br>Heinrich Wild Strasse<br>CH-9435 Heerbrugg<br>St. Gallen<br>Switzerland | Ola Rollen, President & CEO<br>Walter Schwyter, CFO<br>Steven M. Shilling, CFO<br>Klaus Brammertz (President, Precision Tools Division)<br>Mark Concannon (President, Machine Control Division)<br>Robert Morris (President, Geospatial Imaging Division)<br>Johannes Schwarz (President, Geomatics Division) | Ola Rollen, Chairman<br>Walter Schwyter, Vice Chm.<br>Markus Rauh, Vice Chm.<br>Klaus Brammertz<br>Dieter Fritsch<br>Simon Ball | Hoovers<br>(See Plaintiff's Ex. 10) |
| C.E.JohanssonAB/Hexagon Metrology Nordic AB<br>Filargatan 3<br>Eskilstuna 632 29<br>Sweden | Bo Gunnar Eneholm, CEO<br>Per Holmberg<br>Hans Kenneth Merlenius<br>Ulrika Terese Kerkhoven<br>Magnus Linbom, Sales<br>Thomas Andersson, Sales<br>Anna Karin Snibb, Finance<br>Jarmo Kaunisto, Purchasing<br>Leif Brunnberg, Technology<br>Tomas Larsson, Production<br>Leif Johansson, Mktg.<br>Jan Mattsson, Mktg. | Sven-Eric Hakan Halen<br>Gert Viebke | Westlaw: D&B<br>www.largestcompanies.com<br>Hoovers<br>(See Plaintiff's Ex. 11) |

# EXHIBIT 5



JESSE WHITE
SECRETARY OF STATE

SERVICES    PROGRAMS    PRESS    PUBLICATIONS    DEPARTMENTS    CONTACT

## CORPORATION FILE DETAIL REPORT

| Entity Name | HEXAGON METROLOGY, INC. | File Number | 61617094 |
|---|---|---|---|
| Status | GOODSTANDING | | |
| Entity Type | CORPORATION | Type of Corp | FOREIGN BCA |
| Qualification Date (Foreign) | 04/26/2001 | State | DELAWARE |
| Agent Name | C T CORPORATION SYSTEM | Agent Change Date | 04/26/2001 |
| Agent Street Address | 208 SO LASALLE ST, SUITE 814 | President Name & Address | WILLIAM GRUBER 250 CIRCUIT DR N KINGSTON RI 02852 |
| Agent City | CHICAGO | Secretary Name & Address | COLLIN A WEBB 5051 PEACHTREE CORNER ST 250 NOCROSS GA 30092 |
| Agent Zip | 60604 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 04/01/2008 | For Year | 2008 |
| Old Corp Name | 07/11/2001 - HEXAGON (RHODE ISLAND), INC. 03/14/2007 - BROWN & SHARPE, INC. | | |

**Return to the Search Screen**

**Purchase Certificate of Good Standing**

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE



# State of Rhode Island and Providence Plantations
## Office of the Secretary of State

Corporations Division
148 W. River Street
Providence, Rhode Island 02904-2615
Telephone: (401) 222-3040

[?]
Help with this form

*Hexagon Metrology, Inc.* **Summary Screen**

[ Request a Certificate ]

**The exact name of the Foreign Corporation:** Hexagon Metrology, Inc.

**The name was changed from:** Brown & Sharpe, Inc. **on** 4/6/2006
**The name was changed from:** Hexagon (Rhode Island), Inc. **on** 9/5/2001

**Entity Type:** Foreign Corporation

**Identification Number:** 000118139

**Date of Qualification in Rhode Island:** 04/26/2001        **Effective Date:** 04/26/2001

**The Foreign Corporation is organized under the laws of:** State: DE    Country: USA

**The location of its principal office:**
No. and Street:    250 CIRCUIT DRIVE
City or Town:    NORTH KINGSTOWN    State: RI    Zip: 02852    Country: USA

**The mailing address or specified office:**
No. and Street:
City or Town:    State:    Zip:    Country:

**Agent Resigned:** N        **Address Maintained:** Y

**Name and address of the Registered Agent:**
No. and Street:    10 WEYBOSSET STREET
City or Town:    PROVIDENCE    State: RI    Zip: 02903-
Name:    CT CORPORATION SYSTEM

**The officers and all of the directors of the corporation:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address<br>Address, City or Town, State, Zip Code, Country |
|---|---|---|
| PRESIDENT | WILLIAM GRUBER | 250 CIRCUIT DRIVE<br>NORTH KINGSTOWN, RI 02852- USA |

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

| Class of Stock | Series of Stock | Par Value Per Share | Total Authorized Shares *Num of Shares* | Total Issued and Outstanding *Num of Shares* |
|---|---|---|---|---|
| CWP | | $0.01 | 200.00 | 100.00 |

---

**Purpose**

OPERATE IN THE METROLOGY INDUSTRY/MANUFACTURE OF PRECISION TOOLS

TITLE: 7-1.1

---

**Select a type of filing from below to view this business entity filings:**

ALL FILINGS
Annual Report
Annual Report - Amended
Application for Amended Certificate of Authority
Application for Certificate of Authority
Click Here to access 2006 and 2007 annual reports filed and imaged prior to July 25, 2007. Identification Number is Required

[ View Filings ]    [ New Search ]

© 2007 - 2008 State of Rhode Island and Providence Plantations
All Rights Reserved

?
Help

# EXHIBIT 6

Annual Report **2007**



Hexagon's mission:
**To measure objects**
**To position objects**
**To update objects**
**To time processes**



precision in everything

Board of Directors and Group Management






Ola Rollén

Melker Schörling

### Board of Directors

#### Melker Schörling

Stockholm, Sweden, born in 1947

Chairman of the Board since 1999

Other assignments: Chairman of Melker Schörling AB, Aarhus-Karlshamn AB, Securitas AB and Securitas Systems AB. Deputy Chairman of Assa Abloy AB. Board member of Hennes & Mauritz AB.

Education: B.Sc. (Econ.)

Hexagon Committees: Chairman of Nomination Committee and Remuneration Committee

Independent of the company and its management

Hexagon shareholding: 11 812 500 class A shares and 50 415 654 class B shares, through Melker Schörling AB

#### Mario Fontana

Herrliberg, Switzerland, born in 1946

Board Member since 2006

Other assignments: Board member of SBB (Schweizerische Bundesbahnen) and four exchange-listed companies: Swissquote, Inficon, Dufry and X-Rite.

Education: M.A., Georgia Institute of Technology and ETH Zurich

Hexagon Committees: Audit Committee

Independent of the company, its management and major shareholders

Hexagon shareholding: 60 195 class B shares

#### Ulf Henriksson

Oxshott, UK, born in 1963

Board Member since 2007

Other assignments: CEO of Invensys plc.

Education: Master of Engineering

Independent of the company, its management and major shareholders

Hexagon shareholding: –



#### Maths-Olov Sundqvist

Lit, Sweden, born in 1950

Board Member since 1991

Other assignments: CEO of AB Skrindan. Chairman of Jämtlamell AB and Fabös AB. Board member of Investment AB Öresund and Fabege AB.

Education: Economist

Hexagon Committees: Nomination and Remuneration Committees

Not independent, Board Member for more than 12 years

Hexagon shareholding: 39 000 000 class B shares

#### Ola Rollén

London, UK, born in 1965

President and CEO since 2000

Board Member since 2000

Education: B.Sc. (Econ.)

Independent of the company major shareholders

Hexagon shareholding: 2 731 152 class B shares

In 2007, Marianne Arosenius, was also a Member of Hexagon's Board of Directors until she resigned at her own request in August.

Board of Directors and Group Management



Mario Fontana



Ulf Henriksson          Mats-Olov Sundqvist



Ola Rollén          Håkan Halén          Gert Viebke

**Group Management**

### Ola Rollén
London, UK, born in 1965
President and CEO
Employed in 2000
Education: B.Sc. (Econ.)
Hexagon shareholding:
2 731 152 class B shares

### Håkan Halén
Sollentuna, Sweden, born in 1954
Chief Financial Officer
Employed in 2001
Education: B.Sc. (Econ.)
Hexagon shareholding:
1 275 441 class B shares

### Gert Viebke
London, UK, born in 1951
Vice President of Strategy
Employed in 2000
Education: B.Sc. (Econ.)
Hexagon shareholding:
1 277 667 class B shares

# Shareholder information

**Annual General Meeting**

The Annual General Meeting will be held on Monday, 5 May 2008 at 5 p.m. at IVA, Grev Turegatan 16, Stockholm, Sweden.

Those who wish to participate and vote at the Annual General Meeting must be registered as shareholders in the share register maintained by VPC no later than 28 April 2008 and notify Hexagon of their intention to attend the Annual General Meeting no later than 12 noon on 30 April 2008.

Notification of attendance should be sent to:
Hexagon AB, P. O. Box 1112, SE-131 26 Nacka Strand, Sweden
Telephone + 46 8 601 26 20
Fax + 46 8 601 26 21
E-mail bolagsstamma@hexagon.se

Applications should state the shareholder's name, personal/ corporate identity number, address and telephone number. Shareholders wishing to be represented by proxy should send a power-of-attorney to Hexagon before the Annual General Meeting.

**Dividend**

The Board of Directors proposes that the dividend for fiscal year 2007 be increased by 41 per cent to 2.35 SEK per share. In addition to the cash dividend, a spin-off of all of the shares in Hexagon Polymers AB is proposed.

The Board proposes 8 May 2008 as the record day for the payment of dividends. Dividends should be in the possession of shareholders by 13 May 2008, assuming that the Annual General Meeting approves the Board of Directors' motion.

**Address**

Hexagon AB
Registered Office: Stockholm
Corp. Reg. No. 556190-4771

Cylindervägen 12
P. O. Box 1112
SE-131 26 Nacka Strand
Sweden
Telephone + 46 8 601 26 20
Fax + 46 8 601 26 21
info@hexagon.se
www.hexagon.se

**Financial Information 2008**

Hexagon will issue financial information concerning fiscal year 2008 on the following dates:

| | |
|---|---|
| First quarter Report | 5 May 2008 |
| 2008 Annual General Meeting | 5 May 2008 |
| Second quarter Report | 8 August 2008 |
| Third quarter Report | 28 October 2008 |
| Year-End Report 2008 | February 2009 |

Financial information is available on www.hexagon.se



If you have any questions, please contact:
Sara Kraft
Investor Relations
Hexagon AB
P. O. Box 1112
SE-131 26 Nacka Strand
Sweden
Telephone + 46 8 601 26 27
E-mail ir@hexagon.se

Production: Hexagon AB in cooperation with Sund Kommunikation AB.
Printing: Strokirk-Landströms AB, Lidköping 2008.
Photography of President & CEO, Board of Directors and Management: Linus Meyer.
Photography of products and operations: Hexagon's subsidiaries.



www.hexagon.se

# EXHIBIT 7

6/4/08 Hoovers Company In-Depth Records (Pg. Unavail. Online)
2008 WLNR 10527125

Hoover's In-Depth Company Records
Copyright  Hoover's Inc. ALL RIGHTS RESERVED.  Austin, TX   Distributed only in
accordance with licensing agreement.

June 4, 2008

**Hexagon    AB**

## Overview

Hexagon fits two businesses into its six-sided world. The company's Measurement
Technologies unit supplies measuring tools and systems to automotive and aerospace
manufacturers. Hexagon's Polymers unit manufactures gaskets for plate heat ex-
changers, rubber and plastic wheels for trucks and forklifts, rubber products, and
extrusions for the automotive and construction industries. The Hexagon Group also
supplies components and industrial robots to the truck industry. The company's
chairman, Melker Schörling, holds about 45% of the company's voting rights.
Hexagon has acquired NovAtel, expanding its portfolio of geospatial and measure-
ment software tools.

<p>The NovAtel acquisition builds on Hexagon's 2005 purchase of Leica Geosystems,
a leading customer for NovAtel, which makes Global Positioning System (GPS) re-
ceivers and related components for aerospace guidance and navigation, precision
agriculture, surveying and mapping, and other applications. Hexagon paid about
$390 million, net of cash, to acquire NovAtel. <p>To bulk up its metrology systems
business, the company purchased the ROMER companies in France and the US. Hexagon
has also acquired two French suppliers of machine automation equipment, D&P Sys-
tems and Topolaser System. <p>A steady stream of acquisitions has helped the com-
pany expand its Polymers unit. Hexagon Polymers plans to seek a separate listing
on The Nordic Exchange in 2008, pending shareholder approval. <p>Hexagon also
plans to divest what was its Engineering unit by 2008. In addition to components
for industrial robots, the business makes chassis spare parts. <p>In 2005 the com-
pany divested its Automation division, which supplied engine and automotive manu-
facturers with components for hydraulic, pneumatic, electrical, and control sys-
tems.

## Contact Information

Cylindervägen 12
SE-131 26 Nacka Strand, Sweden
Sweden

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Phone: +46-8-601-26-20
Fax: +46-8-601-26-21
Website: http://www.hexagon.se

**Key Numbers**

Fiscal Year End: December

2006 Sales ($mil.): $1,965.1

One Year Sales Growth: 62.4%

2006 Net Income ($mil.): $186.8

One Year Income Growth: 140.6%

2006 Employees: 7,601

One Year Employee Growth: 24.4%

Auditor (2008): Ernst & Young AB

**Stock**

Company Type: Public
Foreign Ticker Symbol: HEXA B; Foreign Exchange: Stockholm

**Officers**

Chairman: Melker Schörling, Age: 61

CEO and Director; President Hexagon Metrology: Ola Rollén, Age: 43

CFO: Håkan Halén, Age: 54

VP Strategy: Gert Viebke, Age: 57

President, Hexagon Engineering: Hans Carlsson, Age: 54

President, Hexagon Polymers: Lars Olofsson, Age: 51

Investor Relations and Corporate Communications Manager: Sara Kraft

CEO, Hexagon Polymers: George Brunstam

**Directors**

Chairman: Melker Schörling, Age: 61

Deputy Chairman: Maths-Olov Sundqvist, Age: 58

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Director: Ulf Henriksson, Age: 45

CEO and Director; President Hexagon Metrology: Ola Rollén, Age: 43

Director: Mario Fontana, Age: 62

## **Product Information**

### **Production**

 Hexagon operates production facilities in Asia, Europe, and North America, as well as Australia and New Zealand.                    2006
Sales                              % of total    Europe, Middle East & Africa              61  Americas                                      24  Asia
                          15  Total                                            100

### **Operations**

          2006 Sales                              % of total    Measurement Technolo-
gies          69  Polymers                        18  Engineering
            13  Total                                100

### **Selected Products**

Gaskets, Packing and Sealing Devices
Molded, Extruded and Lathe-Cut Rubber Mechani
Plastic Products
Machinery and Equipment, Industrial and Commerc
Industrial Instruments For Meas, Display and
Analytical Instruments
Measuring and Controlling Devices, NEC
Prepackaged Software
All Other Plastics Product Manufacturing
Rubber Product Manufacturing for Mechanical Use
All Other Rubber Product Manufacturing
Instruments and Related Products Manufacturing for Measuring, Displaying, and Con-
trolling Industrial Process Variables
Analytical Laboratory Instrument Manufacturing
Other Measuring and Controlling Device Manufacturing
Gasket, Packing, and Sealing Device Manufacturing
Software Publishers

## **Key Competitors**

Parker Hannifin
Tomkins
Trimble Navigation

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

FARO Technologies
Federal-Mogul
Intergraph
Nikon
Rudolph Technologies

**Industry**

Electronics
Industrial Manufacturing
Computer Software
Electronic Test & Measurement Instruments
Electronic Inspection & Monitoring Instruments
Scientific & Technical Instruments
Fluid Control Equipment, Pump, Seal & Valve Manufacturing
Industrial Automation & Industrial Control Products Manufacturing
Industrial Machinery & Equipment Manufacturing
Rubber & Plastic Product Manufacturing
Development Tools, Operating Systems & Utilities Software
Engineering, Scientific & CAD/CAM Software

---- INDEX REFERENCES ----

COMPANY: HEXAGON AB

INDUSTRY:  (Test & Measurement Equipment (1TE80); Test & Measurement Equipment
(1TE80); Test & Measurement Equipment (1TE80); Plastics Production & Technology
(1PL91); Plastics Production & Technology (1PL91); Industrial Machinery (1IN57);
Business Services (1BU80); Rubber (1RU41))

REGION:  (Sweden (1SW65))

Language:  EN

OTHER INDEXING:  (HEXAGON AB) (Company Profiles) (Nacka Strand; Sweden)

SIC: 3053; 3061; 3089; 3599; 3823; 3826; 3829; 7372

NAICS CODE: 326199; 326291; 326299; 334513; 334516; 334519; 339991; 511210

Word Count: 680
6/4/08 HOOVCP (No Page)
END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Westlaw.

**Company Profile**

**Hexagon AB**

| | |
|---|---|
| **Firm Type:** | International public company |
| **Ticker:** | HEXA-B |
| **Exchange:** | OTHER |
| **URL:** | http://www.hexagon.se |
| **Headquarters Address:** | PO Box 1112, Cylindervaegen 12 |
| | Nacka Strand |
| | S-131 26 |
| | Sweden |
| **Main Telephone:** | 46 08 601 26 20 |
| **2007 Employees:** | 10062 |
| **Annual Sales:** | $2,304.80 M Sales |
| **Sales Per Employee:** | $229 |
| **FYE:** | Dec 31, 2007 |
| **Primary SIC:** | 3679_Electronic Components, Not Elsewhere Classified |
| **Secondary SIC(s):** | 3593_Fluid Power Cylinders and Actuators |
| | 6719_Holding Companies, Not Elsewhere Classified |
| **NAICS Code:** | 334419_Other Electronic Component Manufacturing |
| **Updated:** | Jul 10, 2008 |
| **Report Prepared On:** | 08/12/2008 |

**Key People**

| Executive Name | Title | Job Function |
|---|---|---|
| Ola Rollen | Chief Executive Officer and President | Chief Executive Officer, President |
| Haakan Halen | Chief Financial Officer | Chief Financial Officer |
| Maths Sundqvist | Director | NA |
| Melker Schoerling | Chairman of the Board | Chairman |
| Sara Kraft | Senior Vice President | NA |
| Gun Nilsson | Director | NA |
| Mario Fontana | Director | NA |

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

| | | |
|---|---|---|
| Ulf Henriksson | Director | NA |
| Gert Viebke | Manager | NA |

Source: Company Intelligence Database, Gale Group, 2008 All Rights Reserved

## Company Overview

### Business Description

Manufacturing: Holding company with interests in metrology equipment, automation products and components and niche engineering

### Top Lists (Last 5 Years)

Hexagon AB does not appear in "Business Rankings Annual" top lists within the past five years

### Historical Sales Summary

**Year Sales**

2007 $2,304.80 M
2006 $2,128.10 M
2005 $1,522.70 M
2004 $1,178.10 M
2003 $975.50 M
2002 $960.90 M
2001 $810.20 M
2000 $600.90 M

Source: Company Intelligence Database, Business Rankings Annual, Gale Group; Thomson Financial, 2008 All Rights Reserved

## Divisions And Subsidiaries

**Hexagon AB**

**Gislaved Gummi AB**
Gislaved
International subsidiary

**Johnson Metall AB**
Oerebro
International subsidiary

**Romer/Cimcore Inc.**
Carlsbad, California
Private Subsidiary, Headquarters Location

**SwePart Transmission AB**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 8

Westlaw.

**FAMILY TREE REPORT**

D&B Completed Analysis:05-26-2008
Database Last Updated:05-26-2008
Source:Copyright (c) 2002 by Dun & Bradstreet, Inc.
Current Date:08/07/2008
Family Report Updated:08/31/2007

**COMPANY INFORMATION**

DUNS:48-033-9423

Name:TESA SA
Registered Address:RUE DU BUGNON 38
RENENS, VD 1020
Country:SWITZERLAND

Telephone:216331600
Fax:216357535

Year Started:1941

**EXECUTIVE(S) INFORMATION**

CEO Name/Title:MARIA FERISSE, DIRECTOR

Executive Name: FRANCOIS GABELLA
Title: CHAIRMAN,MANAGING DIRECTOR,GENERAL MANAGER
Executive Name: ANTONIO APARICIO
Title: DIRECTOR
Executive Name: CATHERINE SELVA
Title: BOARD SECRETARY
Executive Name: MARIA FERRISSE
Executive Name: IAN NOTTAGE
Title: DIRECTOR
Executive Name: NORBERT HANKE
Title: BOARD MEMBER

**BUSINESS DESCRIPTION**

Line of Business:MEASURING AND CONTROLLING DEVICES,
NEC, N

SIC Code(s):

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Primary SIC:3829  MFG MEASURING/CONTROLLING DEVICES
Secondary SICS(s):3545  MFG MACHINE TOOL ACCESSORIES
5063  WHOL ELECTRICAL EQUIPMENT
3823  MFG PROCESS CONTROL INSTRUMENTS

### FINANCIAL INFORMATION

Net Worth (US):$NOT AVAILABLE
Net Worth (Local):NOT AVAILABLE
Profit (US):$NOT AVAILABLE
Profit (Local):NOT AVAILABLE
Currency:SWISS FRANC
Exchange Rate:.8189
Currency Conversion Date:12/01/2006

### SALES INFORMATION

Annual Sales (US):$70,470,000
Annual Sales (Local):87,000,000-ESTIMATED

### EMPLOYEE INFORMATION

Total Employees:350
Employees Here:350

### COMPANY HISTORY/OPERATIONS/RELATIONSHIPS & OTHER INFORMATION

CORPORATE FAMILY HIERARCHY SUMMARY

LEVEL A - HEXAGON AB - ULTIMATE PARENT
     0 Single
     1 Headquarters
     0 Branches

LEVEL B - (SUBSIDIARIES OF LEVEL A)
     12 Single
     16 Headquarters   ****** Selected Company ******
     16 Branches

LEVEL C - (SUBSIDIARIES OF LEVEL B)
     28 Single
     9 Headquarters
     15 Branches

LEVEL D - (SUBSIDIARIES OF LEVEL C)
     6 Single
     6 Headquarters
     19 Branches

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

```
LEVEL E - (SUBSIDIARIES OF LEVEL D)
     0 Single
     1 Headquarters
     4 Branches

LEVEL F - (SUBSIDIARIES OF LEVEL E)
     0 Single
     0 Headquarters
     0 Branches
```

List of Direct Company Relationships ($4.70)
List of All Company Relationships ($312.55)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 9

### FAMILY TREE REPORT

D&B Completed Analysis:05-26-2008
Database Last Updated:05-26-2008
Source:Copyright (c) 2002 by Dun & Bradstreet, Inc.
Current Date:08/07/2008
Family Report Updated:03/28/2008

#### COMPANY INFORMATION

DUNS:05-805-8736

Name:HEXAGON METROLOGY INC
Address:250 CIRCUIT DR
NORTH KINGSTOWN, RI 02852-7441
Country:USA

Telephone:401-886-2000
Year Started:2008

#### EXECUTIVE(S) INFORMATION

CEO Name/Title:WILLIAM GRUBER, PRESIDENT

Executive Name: MARK W DELLANEY
Title: VICE-PRESIDENT
Executive Name: CHARLES XYNELLIS
Title: CONTROLLER

#### BUSINESS DESCRIPTION

Line of Business:MACHINE TOOL ACCESSORIES

Primary SIC:3545  MFG MACHINE TOOL ACCESSORIES

#### FINANCIAL INFORMATION

Net Worth (US):$NOT AVAILABLE
Net Worth (Local):$NOT AVAILABLE
Profit (US):$NOT AVAILABLE
Profit (Local):$NOT AVAILABLE
Currency:U.S. DOLLAR

#### SALES INFORMATION

Annual Sales (US):$95,100,000

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Annual Sales (Local):$95,100,000-ESTIMATED

**EMPLOYEE INFORMATION**

Total Employees:1,311
Employees Here:700

**COMPANY HISTORY/OPERATIONS/RELATIONSHIPS & OTHER INFORMATION**

CORPORATE FAMILY HIERARCHY SUMMARY

LEVEL A - HEXAGON AB - ULTIMATE PARENT
      0 Single
      1 Headquarters
      0 Branches

LEVEL B - (SUBSIDIARIES OF LEVEL A)
      12 Single
      16 Headquarters   ****** Selected Company ******
      16 Branches

LEVEL C - (SUBSIDIARIES OF LEVEL B)
      28 Single
      9 Headquarters
      15 Branches

LEVEL D - (SUBSIDIARIES OF LEVEL C)
      6 Single
      6 Headquarters
      19 Branches

LEVEL E - (SUBSIDIARIES OF LEVEL D)
      0 Single
      1 Headquarters
      4 Branches

LEVEL F - (SUBSIDIARIES OF LEVEL E)
      0 Single
      0 Headquarters
      0 Branches

List of Direct Company Relationships ($4.70)
List of All Company Relationships ($312.55)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**Dialog eLink:** <u>D&B Reports</u>
3/9/1
DIALOG(R)File 516: D & B - DUNS MARKET IDENTIFIERS
(c) 2008 D&B). All rights reserved.

21482473
**Hexagon Metrology Inc**
250 Circuit Dr
North Kingstown , RI  02852-7441

**Telephone:** 401-886-2000
**County:** Washington    **MSA:** 6480 (Providence-Fall River-Warwick, Ri-MA)
**Region:** New England

**Business:** Mfg Machine Tool Accessories

**NAICS Codes:** 333515 (Cutting Tool and Machine Tool Accessory Manufacturing)

**Primary SIC:**
3545 Machine tool accessories
 35450000 Machine tool accessories, nsk

**Latest Year Organized:** 2008
**State of Incorporation:** DE
**Date of Incorporation:** 01/22/1968
**Annual Sales Revision Date:** 05/19/2008

|  | Latest Year | Trend Year | Base Year |
|---|---|---|---|
|  |  | 2006 | 2004 |
| **Sales ($)** | 95,100,000 E | NA | NA |
| **Employees Total** | 1,311 | 1,311 | 1,311 |
| **Employees Here** | 700 |  |  |
| **Sales Growth** | NA % |  |  |
| **Net Worth ($)** | NA |  |  |
| **Employment Growth** | NA % |  |  |

**Square Footage:** NA   Rented
**Number of Accounts:** NA

**THIS IS:**

   A MANUFACTURING LOCATION
   A SUBSIDIARY HEADQUARTERS LOCATION
   AN ULTIMATE LOCATION
   A CORPORATION
   NON-US OWNED

**DUNS Number:** 05-805-8736
**Parent DUNS:** 35-471-6029
**Corporate Family DUNS:** 05-805-8736
**President:**              Gruber, William          /President
**Vice President:**         Dellaney, Mark W         /Vice President
**Controller:**            Xynellis, Charles        /Controller

**Latest Update to Record:** 03/28/08


? t s1/9/all

**Dialog eLink:** <u>D&B Reports</u>
1/9/1

DIALOG(R)File 516: D & B - DUNS MARKET IDENTIFIERS
(c) 2008 D&B). All rights reserved.

34395220
**Hexagon Metrology Inc**
2473 Belvo Rd
Miamisburg , OH   45342-3909

**Telephone:** 937-353-1207
**County:** Montgomery      **MSA:** 2000 (Dayton-Springfield, OH)
**Region:** North Central

**Business:** Whol Industrial Equipment

**NAICS Codes:** 423830 (Industrial Machinery and Equipment Merchant Wholesalers)

**Primary SIC:**
5084 Industrial machinery and equipment
  50840703 Measuring and testing equipment, electrical
**Annual Sales Revision Date:** 05/19/2008

|  | Latest Year | Trend Year | Base Year |
|---|---|---|---|
|  |  | 2006 | 2004 |
| Sales ($) | 730,000 E | NA | NA |
| Employees Total | NA | NA | NA |
| Employees Here | 5 |  |  |
| Sales Growth | NA % |  |  |
| Net Worth ($) | NA |  |  |
| Employment Growth | NA % |  |  |

**Square Footage:** NA
**Number of Accounts:** NA

**THIS IS:**
  A BRANCH LOCATION

**DUNS Number:** 83-569-7251
**Headquarter DUNS Number:** 02-614-6535   Hexagon Metrology Inc
**Corporate Family DUNS:** 14-493-6437   Hexagon Holdings Inc.
**Manager:**                          Glover, Lester                          /Manager

**Latest Update to Record:** 02/19/08

---

**Dialog eLink:** D&B Reports
1/9/2
DIALOG(R)File 516: D & B - DUNS MARKET IDENTIFIERS
(c) 2008 D&B). All rights reserved.

34395215
**Hexagon Metrology Inc**
**Brown & Sharpe Precision Ctr**
601 Grassmere Park Ste 17
Nashville , TN   37211-3681

**Telephone:** 615-331-0800
**County:** Davidson     **MSA:** 5360 (Nashville, TN)
**Region:** South Central

**Business:** Whol Industrial Equipment

**NAICS Codes:** 423830 (Industrial Machinery and Equipment Merchant Wholesalers)

**Primary SIC:**
5084 Industrial machinery and equipment
  50840703 Measuring and testing equipment, electrical
**Annual Sales Revision Date:** 07/19/2008

|  | Latest Year | Trend Year | Base Year |
|---|---|---|---|
|  |  | 2006 | 2004 |
| **Sales ($)** | 1,100,000 E | NA | NA |
| **Employees Total** | NA | NA | NA |
| **Employees Here** | 7 |  |  |
| **Sales Growth** | NA % |  |  |
| **Net Worth ($)** | NA |  |  |
| **Employment Growth** | NA % |  |  |

**Square Footage:** NA
**Number of Accounts:** NA

**THIS IS:**
  A BRANCH LOCATION

**DUNS Number:** 83-569-7079
**Headquarter DUNS Number:** 02-614-6535   Hexagon Metrology Inc
**Corporate Family DUNS:** 14-493-6437   Hexagon Holdings Inc.
**Manager:**                                Chiasson, Al                         /Manager

**Latest Update to Record:** 07/16/08

---

**Dialog eLink:** D&B Reports
1/9/3
DIALOG(R)File 516: D & B - DUNS MARKET IDENTIFIERS
(c) 2008 D&B). All rights reserved.

32816798
**Hexagon Metrology Inc**
**Sheffield Measurement**
660 S Military Rd
Fond Du Lac , WI  54935-4752

**Telephone:** 920-906-7700
**County:** Fond du Lac
**Region:** North Central

**Business:** Mfg Coordinate Measurement Machines

**NAICS Codes:** 333515 (Cutting Tool and Machine Tool Accessory Manufacturing)

**Primary SIC:**
3545 Machine tool accessories
  35450000 Machine tool accessories, nsk

**Secondary SIC(s):**
3823 Process control instruments
  38230000 Process control instruments, nsk
**Annual Sales Revision Date:** 07/19/2008

|  | Latest Year | Trend Year | Base Year |
|---|---|---|---|
|  |  | 2006 | 2004 |
| **Sales ($)** | 2,900,000 E | NA | NA |

| | | | |
|---|---|---|---|
| **Employees Total** | NA | NA | NA |
| **Employees Here** | 50 | | |
| **Sales Growth** | NA % | | |
| **Net Worth ($)** | NA | | |
| **Employment Growth** | NA % | | |

**Square Footage:** NA  Owned
**Number of Accounts:** NA

**THIS IS:**

A MANUFACTURING LOCATION
A BRANCH LOCATION

**DUNS Number:** 78-436-4403
**Headquarter DUNS Number:** 02-614-6535  Hexagon Metrology Inc
**Corporate Family DUNS:** 14-493-6437  Hexagon Holdings Inc.
**Marketing-Advertising:**          Looby, Thomas          /Dir. of Marketing
**Engineering:**          Schmid, Terry          /Engineer
**Management:**          Looby, Thomas          /Dir. of Marketing

**Latest Update to Record:** 07/03/08

---

**Dialog eLink:** D&B Reports
1/9/4
DIALOG(R)File 516: D & B - DUNS MARKET IDENTIFIERS
(c) 2008 D&B). All rights reserved.

32343596
**Hexagon Metrology Inc**
7 Orchard Ste 102
Lake Forest , CA  92630-8334

**Telephone:** 949-727-0927
**County:** Orange    **MSA:** 5945 (Orange County, CA)
**Region:** Pacific

**Business:**  Manufactures Precision Measuring Equipment and Precision Instruments

**NAICS Codes:**  332212 (Hand and Edge Tool Manufacturing)

**Primary SIC:**
3545 Machine tool accessories
  35450100 Precision measuring tools

**Secondary SIC(s):**
3823 Process control instruments
  38230000 Process control instruments, nsk

| | Latest Year | Trend Year | Base Year |
|---|---|---|---|
| | | | |
| **Sales ($)** | NA | NA | NA |
| **Employees Total** | NA | NA | NA |
| **Employees Here** | NA | | |
| **Sales Growth** | NA % | | |
| **Net Worth ($)** | NA | | |
| **Employment Growth** | NA % | | |

**Square Footage:** NA

**Number of Accounts:**  NA

**THIS IS:**

   A MANUFACTURING LOCATION
   A BRANCH LOCATION

**DUNS Number:**  62-662-3735
**Headquarter DUNS Number:** 02-614-6535   Hexagon Metrology Inc
**Corporate Family DUNS:** 14-493-6437   Hexagon Holdings Inc.


**Latest Update to Record:**  10/31/07


Dialog eLink: D&B Reports
1/9/5
DIALOG(R)File 516: D & B - DUNS MARKET IDENTIFIERS
(c) 2008 D&B). All rights reserved.

23845209
**Hexagon Metrology Inc**
**Brown & Sharpe Precision Ctr**
51170 Grand River Ave
Wixom , MI  48393-3361

**Telephone:** 248-449-9400
**County:** Oakland     **MSA:** 2160 (Detroit, MI)
**Region:** North Central

**Business:**  Whol Specialty Gauging Components

   **NAICS Codes:**  423830 (Industrial Machinery and Equipment Merchant Wholesalers)

**Primary SIC:**
5084 Industrial machinery and equipment
  50840700 Instruments and control equipment
**Annual Sales Revision Date:**  05/19/2008

|  | Latest Year | Trend Year | Base Year |
|---|---|---|---|
|  |  | 2006 | 2004 |
| Sales ($) | 7,400,000 E | NA | NA |
| Employees Total | NA | NA | NA |
| Employees Here | 50 |  |  |
| Sales Growth | NA % |  |  |
| Net Worth ($) | NA |  |  |
| Employment Growth | NA % |  |  |


**Square Footage:**  NA
**Number of Accounts:**  NA

**THIS IS:**
   A BRANCH LOCATION

**DUNS Number:**  10-911-3485
**Headquarter DUNS Number:** 02-614-6535   Hexagon Metrology Inc
**Corporate Family DUNS:** 14-493-6437   Hexagon Holdings Inc.
**Regional-Area Management:**        Rosignal, Jack               /Branch Manager


**Latest Update to Record:**  11/08/07

**Dialog eLink:** <u>D&B Reports</u>
1/9/6
DIALOG(R)File 516: D & B - DUNS MARKET IDENTIFIERS
(c) 2008 D&B). All rights reserved.

21482473
**Hexagon Metrology Inc**
250 Circuit Dr
North Kingstown , RI   02852-7441

**Telephone:** 401-886-2000
**County:** Washington    **MSA:** 6480 (Providence-Fall River-Warwick, Ri-MA)
**Region:** New England

**Business:** Mfg Machine Tool Accessories

**NAICS Codes:** 333515 (Cutting Tool and Machine Tool Accessory Manufacturing)

**Primary SIC:**
3545 Machine tool accessories
  35450000 Machine tool accessories, nsk

**Latest Year Organized:** 2008
**State of Incorporation:** DE
**Date of Incorporation:** 01/22/1968
**Annual Sales Revision Date:** 05/19/2008

|                        | Latest Year  | Trend Year | Base Year |
|------------------------|--------------|------------|-----------|
|                        |              | 2006       | 2004      |
| **Sales ($)**          | 95,100,000 E | NA         | NA        |
| **Employees Total**    | 1,311        | 1,311      | 1,311     |
| **Employees Here**     | 700          |            |           |
| **Sales Growth**       | NA %         |            |           |
| **Net Worth ($)**      | NA           |            |           |
| **Employment Growth**  | NA %         |            |           |

**Square Footage:** NA   Rented
**Number of Accounts:** NA

**THIS IS:**

   A MANUFACTURING LOCATION
   A SUBSIDIARY HEADQUARTERS LOCATION
   AN ULTIMATE LOCATION
   A CORPORATION
    NON-US OWNED

**DUNS Number:** 05-805-8736
**Parent DUNS:** 35-471-6029
**Corporate Family DUNS:** 05-805-8736
**President:**                           Gruber, William             /President
**Vice President:**                    Dellaney, Mark W          /Vice President
**Controller:**                         Xynellis, Charles           /Controller

**Latest Update to Record:** 03/28/08

**Dialog eLink:** <u>D&B Reports</u>
1/9/7
DIALOG(R)File 516: D & B - DUNS MARKET IDENTIFIERS
(c) 2008 D&B). All rights reserved.

21291063
**Hexagon Metrology Inc**
**Brown & Sharpe Precision Ctr**
1558 Todd Farm Dr
Elgin , IL  60123-1287

**Telephone:** 847-931-0100
**County:** Kane    **MSA:** 1600 (Chicago, IL)
**Region:** North Central

**Business:**  Whol Industrial Equipment

**NAICS Codes:**  423830 (Industrial Machinery and Equipment Merchant Wholesalers)

**Primary SIC:**
5084 Industrial machinery and equipment
  50840000 Industrial machinery and equipment, nsk
**Annual Sales Revision Date:**  05/19/2008

|  | Latest Year | Trend Year | Base Year |
|---|---|---|---|
|  |  | 2006 | 2004 |
| Sales ($) | 4,600,000 E | NA | NA |
| Employees Total | NA | NA | NA |
| Employees Here | 30 |  |  |
| Sales Growth | NA % |  |  |
| Net Worth ($) | NA |  |  |
| Employment Growth | NA % |  |  |

**Square Footage:**  NA
**Number of Accounts:**  NA

**THIS IS:**
  A BRANCH LOCATION

**DUNS Number:** 05-354-3018
**Headquarter DUNS Number:** 02-614-6535  Hexagon Metrology Inc
**Corporate Family DUNS:** 14-493-6437  Hexagon Holdings Inc.
**Manager:**                            Deming, Ken                            /Manager

**Latest Update to Record:**  02/03/08

---

**Dialog eLink:** D&B Reports
1/9/8
DIALOG(R)File 516: D & B - DUNS MARKET IDENTIFIERS
(c) 2008 D&B). All rights reserved.

19716612
**Hexagon Metrology Inc**
**Brown & Sharpe**
250 Circuit Dr
North Kingstown , RI  02852-7441

**Telephone:** 401-886-2000
**County:** Washington    **MSA:** 6480 (Providence-Fall River-Warwick, Ri-MA)
**Region:**  New England

**Business:**  Mfg Process Control Instruments Mfg Machine Tool Accessories

**NAICS Codes:**  334513 (Instruments and Related Products Manufacturing for Measuring, Displaying, and Controlling Industrial Process Variables)

**Primary SIC:**
3823 Process control instruments
  38230000 Process control instruments, nsk

**Secondary SIC(s):**
3545 Machine tool accessories
  35450100 Precision measuring tools

**Latest Year Organized:** 2001
**Annual Sales Revision Date:** 05/02/2008

|  | Latest Year | Trend Year | Base Year |
|---|---|---|---|
|  |  | 2006 | 2004 |
| Sales ($) | 430,000,000 | NA | NA |
| Employees Total | 1,900 | 1,900 | 1,900 |
| Employees Here | 240 |  |  |
| Sales Growth | NA % |  |  |
| Net Worth ($) | NA |  |  |
| Employment Growth | NA % |  |  |

**Square Footage:** 120,000   Owned
**Number of Accounts:** NA

**THIS IS:**

A MANUFACTURING LOCATION
A SUBSIDIARY HEADQUARTERS LOCATION
A CORPORATION
AN IMPORTER EXPORTER

**DUNS Number:** 02-614-6535
**Parent DUNS:** 14-493-6437   Hexagon Holdings Inc.
**Corporate Family DUNS:** 14-493-6437   Hexagon Holdings Inc.
**President:**                        Gruber, William                /Pres-Ceo
                    **Vice President:**     Rossignol, Jack          /V Pres
                    Delaney, Mark          /V Pres-Cfo
                    **Secretary:**          Shuck, Maria             /SEC
                    Cirkman, Jennifer      /SEC
                    **Manager:**            Card, Gary               /Manager
                    Laferriere, Rene       /Manager of Sales
                    McBride, Kevin         /Fin Mgr
                    Summer, Rich           /Manager of Engineering
**Sales:**                Laferriere, Rene        /Manager of Sales
**Marketing-Advertising:** Gencarella, Karen       /Director of Marketing
Operations:               Culbertson, Andrew      /Dir Opers
**Finance:**              McBride, Kevin          /Fin Mgr
**Data Processing:**      Alarie, William         /Mis Mgr
**Engineering:**          Summer, Rich            /Manager of Engineering
**Purchasing:**           Kissenger, Lee          /Purchasing Agent
**Chief Executive Officer:** Gruber, William      /Pres-Ceo
**Chief Financial Officer:** Delaney, Mark        /V Pres-Cfo
                    **Management:**         Culbertson, Andrew       /Dir Opers
                    Gencarella, Karen      /Director of Marketing

**Latest Update to Record:** 07/03/08

?

| Topic | Description |
|---|---|
| History | Detailed information on the history of a company, including background information on the management team and key principals, and information on related companies. |
| Corporate Family | Detailed information on all related companies, including subsidiaries, affiliates and branches. |
| Registration & Incorporation | Detailed registration and incorporation information, including the date and state of incorporation and the type of corporation formed. |
| Company Operations | Detailed information on a company's operations, including the identity of the parent company, the geographic scope of the business, and the key holdings. |
| Industry Classification | Details on the specific industry within which a company is classified. |

## History

**Officer(s):**                    **Director(s):**
WILLIAM GRUBER, PRES-CEO    THE OFFICER(S)

MARK DELANEY, V PRES-
CFO

JACK ROSSIGNOL, V PRES

MARIA SHUCK, SEC

Business started 1833. Present control succeeded April 2001. 100% of capital stock is owned by parent company.

In April 2001, the Board of Directors of Hexagon AB DUNS #35-471-6029, voted to acquire the business operations of Brown & Sharpe Mfg Co's Metrology Business Units. The former Brown & Sharpe Mfg Co, DUNS #00-119-1246, continues doing business as BNS Holding, Inc, Warwick, RI. The purchase price was approximately US$170 million. The Metrology Business Units under the name, Hexagon Metrology, Inc (formerly Brown & Sharpe, Inc), is headquarted in North Kingstown, RI, and operates as a wholly-owned direct subsidiary of Hexagon Holdings, Inc, which in turn is a subsidiary of Hexagon AB, Nacka Strans, Sweden.

**MANAGEMENT TEAM:**

WILLIAM GRUBER. Antecedents are undetermined.

MARK DELANEY. Antecedents are undetermined.

JACK ROSSIGNOL. Antecedents are undetermined.

MARIA SHUCK. Antecedents are undetermined.

RELATED COMPANY

Hexagon AB, Nacka Strand, Sweden, DUNS 354716029. This is the ultimate parent company.

## Corporate Family

**Parent:**

| | | |
|---|---|---|
| Hexagon holdings, inc. | North kingstown, RI | DUNS # 14-493-6437 |

**Subsidiaries (International):**

| | | |
|---|---|---|
| Automation Software de Mexico, S.A. de C.V. | APODACA, MEXICO | DUNS # 81-245-2886 |
| Hexagon Metrology (Qingdao) Co.Ltd | QINGDAO, CHINA | DUNS # 54-478-6593 |

**Branches (US):**

| | | |
|---|---|---|
| Hexagon Metrology Inc | 7 Orchard Ste 102, Lake Forest, CA | DUNS # 62-662-3735 |
| Hexagon Metrology Inc | 1742 Solutions Ctr, Chicago, IL | DUNS # 14-870-2488 |
| Hexagon Metrology Inc | 1558 Todd Farm Dr, Elgin, IL | DUNS # 05-354-3018 |
| Hexagon Metrology Inc | 51170 Grand River Ave, Wixom, MI | DUNS # 10-911-3485 |
| Hexagon Metrology Inc | 2473 Belvo Rd, Miamisburg, OH | DUNS # 83-569-7251 |
| Hexagon Metrology Inc | 660 S Military Rd, Fond Du Lac, WI | DUNS # 78-436-4403 |
| Hexagon Metrology, Inc | 2572 Solutions Ctr, Chicago, IL | DUNS # 62-697-6224 |
| Hexagon Metrology, Inc | 13245 Reese Blvd W, Huntersville, NC | DUNS # 05-712-2165 |

Hexagon Metrology, Inc    601 Grassmere Park Ste 17, Nashville, TN    DUNS # 83-569-7079

## Registration & Incorporation

**Registered Name**: Hexagon metrology inc
**Business Type**: Corporation
**Corporation Type**: Profit
**Date incorporated**: April 06, 2001
**State of incorporation**: Delaware
**Duration** : Perpetual
**Status**: Active

**Filing Date**: April 06, 2001
**Where filed**: SECRETARY OF STATE/CORPORATIONS DIVISION, DOVER, DE

Corporate and business registrations provided by management or other source.

## Company Operations

**Description**: Subsidiary of HEXAGON HOLDINGS, INC., NORTH KINGSTOWN, RI started 2001 which operates as a manufacturer of precision measurement equipment. Parent company owns 100% of capital stock.

This is a subsidiary of Hexagon Holdings, Inc, North Kingstown, RI, DUNS #14-493-6437. Reference is made to this report for additional information on the operations and management of Hexagon Holdings, Inc.

Manufactures industrial instruments for control of process variables (75%). Manufactures machine tools, attachments and accessories, specializing in precision measuring tools (25%).

Terms are net 30 days. Sells to diversified industries. Territory : Worldwide.

Nonseasonal.

**Employees**: 1,900 which includes officer(s). 240 employed here.

**Facilities**: Owns 120,000 sq. ft. in a 2 story concrete block building.

**Location**: Industrial section on side street.

**Branches**: This business has multiple branches, detailed branch/division information is available in Dun & Bradstreets linkage or family tree products.

## Industry Classification

| SIC | | NAICS | |
|-----|-----|-------|-----|
| 38230000 | Process control instruments | 334513 | Instruments and Related Product Manufacturing for Measuring, Displaying,and Controlling Industrial Process Variables |
| 35450100 | Precision measuring tools | 332212 | Hand and Edge Tool Manufacturing |

Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.
The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

Company Snapshot    Creditworthiness    Payment History & Trends    Public Filings    History & Operations    Banking & Finance

## Banking & Finance

### Key Business Ratios

D&B has been unable to obtain sufficient financial information from this company to calculate business ratios. Our check of additional outside sources also found no information available on its financial performance.

To help you in this instance, ratios for other firms in the same industry are provided below to support your analysis of this business.

Industry Norms based on 56 establishments

| | This Business | Industry Median | Industry Quartile |
|-----|-----|-----|-----|
| **Profitability** | | | |
| Return on Sales | UN | 5.5 | UN |

# EXHIBIT 10

6 of 8 DOCUMENTS

Copyright 2008 Hoover's Inc., All Rights Reserved



HOOVERS™

A D&B COMPANY

Hoover's Company Records - In-depth Records

August 5, 2008

Leica Geosystems Holdings AG

Heinrich Wild Strasse
Heerbrugg CH-9435
Switzerland

**\* \* \* \* \* \* \* \* \* COMMUNICATIONS \* \* \* \* \* \* \* \* \***
**TELEPHONE:** +41-71-727-31-31
**FAX:** +41-71-727-46-74
**URL:** http://www.leica-geosystems.com

**\* \* \* \* \* \* \* \* \* COMPANY IDENTIFIERS \* \* \* \* \* \* \* \* \***
**HOOVER ID:** 101599

**\* \* \* \* \* \* \* \* \* COMPANY INFORMATION \* \* \* \* \* \* \* \* \***
**LEGAL STATUS:** Subsidiary

**\* \* \* \* \* \* \* \* \* EXECUTIVES \* \* \* \* \* \* \* \* \***

| OFFICER | TITLE | AGE | SALARY | BONUS |
|---|---|---|---|---|
| Klaus Brammertz | President, Precision Tools Division and Board Member | - | - | - |
| Robert Morris | President, Geospatial Imaging Division | - | - | - |
| Bob Williams | President, Region Americas | - | - | - |
| Richard McKay | VP Sales, Geospatial Imaging Division | - | - | - |
| Sue McGrath | VP Human Resources, Geospatial Imaging Division | - | - | - |
| Ola Rollén | Chairman, President and CEO | 43 | - | - |
| Walter Schwyter | Vice Chairman and CFO; President, Developing Business Division, and Site Manager, Heerbrugg | - | - | - |
| Alessandra Doëll | Director Marketing Communications | - | - | - |
| Andrea Cabrucci | President, Region EMEA | - | - | - |
| Mark Concannon | President, Machine Control Division | - | - | - |
| Norbert Hanke | President, Region ROW | - | - | - |
| Hongquan Li | President, Region China | - | - | - |
| Johannes Schwarz | President, Geomatics | - | - | - |

| | | | | |
|---|---|---|---|---|
| | Division | | | |
| Andy Gutman | CFO, Geospatial Imaging Division | - | - | - |
| Brad Skelton | CTO, Geospatial Imaging Division | - | - | - |
| Martin Tremp | SVP Strategic Planning, Geospatial Imaging Division | - | - | - |
| Vincent Dessard | VP Business Development, Geospatial Imaging Division | - | - | - |
| Bruce Chaplin | VP Product Development, Geospatial Imaging Division | - | - | - |
| Guy Perkins | VP Global Services, Geospatial Imaging Division | - | - | - |
| Mladen Stojic | VP Product Management and Marketing, Geospatial Imaging Division | - | - | - |
| Steven M. Shilling | CFO | - | - | - |

| DIRECTOR | TITLE | AGE |
|---|---|---|
| Markus Rauh | Vice Chairman | - |
| Simon Ball | Director | 48 |
| Dieter Fritsch | Director | - |
| Klaus Brammertz | President, Precision Tools Division and Board Member | - |
| Ola Rollén | Chairman, President and CEO | 43 |
| Walter Schwyter | Vice Chairman and CFO; President, Developing Business Division, and Site Manager, Heerbrugg | - |

* * * * * * * * * **DESCRIPTION** * * * * * * * * * *

For people who want to be very clear of where they stand and the lay of the land, Leica Geosystems Holdings makes the necessary tools. The company manufactures civil engineering and industrial process equipment and software products for surveying, mapping, machine guidance, metrology, navigation, and image processing. Its products include laser-based measuring devices, Global Positioning System (GPS) receivers, handheld measuring devices, machine vision systems, and 3-D scanning systems. Leica Geosystems, part of **Hexagon AB**, is enriching its software development to process and model spatial information.

In 2004 US-based Danaher Corporation made a bid of nearly $1 billion to acquire the company. However, in mid-2005 Leica Geosystems cooled toward the offer and withdrew its support after receiving a nicer offer from **Hexagon**. Leica Geosystems had earlier rejected an offer from **Hexagon**. By September of 2005 **Hexagon** held more than 98% of the company's shares.

In 2006 Leica Geosystems launched its DISTO handheld laser tool, which provides distance measurements indoors.

**HOOVER INDUSTRIES:**

- Electronics
  - ELECTRONIC TEST & MEASUREMENT INSTRUMENTS


- Computer Software
  - Engineering, Scientific & CAD/CAM Software
  - Manufacturing, Warehousing & Industrial Software

- Industrial Manufacturing
  - Industrial Automation & Industrial Control Products Manufacturing

\* \* \* \* \* \* \* \* \* MARKET AND INDUSTRY \* \* \* \* \* \* \* \* \* \*

**NAICS CODES:**
334513 - Instruments and Related Products Manufacturing for Measuring, Displaying, and Controlling Industrial Process Variables
334519 - Other Measuring and Controlling Device Manufacturing
511210 - Software Publishers
**SIC CODES:**
3823 - Process control instruments
3829 - Measuring & controlling devices, nec
7372 - Prepackaged software
**COMPETITORS:**

- Intergraph
- Nikon
- Trimble Navigation
- Applied Concepts
- FARO Technologies
- Keigan Systems
- KVH Industries
- Laser Atlanta
- Laser Technology
- NavCom Technology
- Overwatch Systems

\* \* \* \* \* \* \* \* \* FINANCIALS \* \* \* \* \* \* \* \* \*

| (Millions U.S. Dollars) | 2005 | 2004 | 2003 |
|---|---|---|---|
| Revenue | $644.2 | $537.6 | $537.7 |
| Net Income | $42.2 | $4.4 | $16.0 |
| Net Profit | 6.5% | 0.8% | 3.0% |
| Employees | 2,398 | 2,461 | 2,388 |

\* \* \* \* \* \* \* \* \* SERVICE FIRMS \* \* \* \* \* \* \* \* \*

**AUDITOR:** PricewaterhouseCoopers AG, 2008

**LOAD-DATE:** August 5, 2008

# EXHIBIT 11

Westlaw.

**FAMILY TREE REPORT**

D&B Completed Analysis:05-26-2008
Database Last Updated:05-26-2008
Source:Copyright (c) 2002 by Dun & Bradstreet, Inc.
Current Date:08/07/2008

**COMPANY INFORMATION**

DUNS:63-262-5971

Name:HEXAGON METROLOGY NORDIC AB
Related Name(s):C E JOHANSSON AB
Address:FILARGATAN 3
ESKILSTUNA 632 29
Country:SWEDEN

Telephone:16160800
Year Started:2000

**EXECUTIVE(S) INFORMATION**

CEO Name/Title:BO GUNNAR ENEHOLM

Executive Name: PER HOLMBERG
Executive Name: GERT OVE RAGNAR VIEBKE
Title: BOARD MEMBER
Executive Name: HANS KENNETH MERLENIUS
Executive Name: ULRIKA TERESE KERKHOVEN
Executive Name: SVEN-ERIC HAKAN HALEN
Title: BOARD DEPUTY
Executive Name: ULRIKA KERKHOVEN
Title: FINANCE MANAGER
Executive Name: BO ENEHOLM
Title: MANAGER MARKETING
Executive Name: BO ENEHOLM
Title: PURCHASING MANAGER
Executive Name: ULRIKA KERKHOVEN
Title: DATA PROCESSING MANAGER

**BUSINESS DESCRIPTION**

Line of Business:INDUSTRIAL MACHINERY AND EQUIPMENT

SIC Code(s):

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Primary SIC:5084  WHOL INDUSTRIAL EQUIPMENT
Secondary SICS(s):8711  ENGINEERING SERVICES

**FINANCIAL INFORMATION**

Net Worth (US):$4,060,466
Net Worth (Local):29,445,000-ACTUAL
Profit (US):$256,908
Profit (Local):1,863,000-ACTUAL
Currency:SWEDISH KRONA
Exchange Rate:.1448
Currency Conversion Date:12/01/2006

**SALES INFORMATION**

Annual Sales (US):$10,416,690
Annual Sales (Local):75,538,000-ACTUAL

**EMPLOYEE INFORMATION**

Total Employees:45
Employees Here:45

**COMPANY HISTORY/OPERATIONS/RELATIONSHIPS & OTHER INFORMATION**

CORPORATE FAMILY HIERARCHY SUMMARY

LEVEL A - HEXAGON METROLOGY AB - ULTIMATE PARENT
        0 Single
        1 Headquarters
        1 Branches

LEVEL B - (SUBSIDIARIES OF LEVEL A)
        6 Single
        1 Headquarters   ****** Selected Company ******
        2 Branches

LEVEL C - (SUBSIDIARIES OF LEVEL B)
        1 Single
        0 Headquarters
        0 Branches

List of Direct Company Relationships ($4.70)
List of All Company Relationships ($28.20)

END OF DOCUMENT

\

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



Find the latest closing figures

camfil   www.camfilarr.com   dymova.se   NELCO   NELCO CONTACT AB

förbo   Trivsel, tillgänglighet och trygghet   Valcon

NELCO producerar, importerar, marknadsför och distribuerar produkter för el & elektronik installationer.

www.nelco.se

Carlsberg

NOKIA   CONNECTING PEOPLE

VOLVO   www.volvocars.se
© Nordic Netproducts AB

| Start page | Order Access | Advertise | About the site | About us |

CE Johansson AB - Detailed information

Start page > Search result Company:C > CE Johansson AB

[Print]

# CEJ since 1911

## CE Johansson AB

Select a country to search companies in

Search for companies in  NORDIC

Sweden | Denmark | Finland | Norway | Nordic

Search company

Company:   C

VAT number:

[Clear]  Advanced search  [Search]

Search for companies by industry

Search companies within industry:

Show industry overview

[Clear]  [Search]

Top lists
• The largest companies by turnover (excl. subsidiaries)
• The largest employers
• The largest companies (earnings)

Login

User name:

Password:

[Login]

Forgot your login information?     Order Access

| | |
|---|---|
| Business ID: | 556032-7305 |
| Company: | CE Johansson AB |
| Address: | Box 575 |
| | SE-631 08 Eskilstuna |
| Visiting address: | Västra storgatan 17 |
| County: | Södermanlands län |
| Telephone: | +46 (0)16-150640 |
| Fax: | +46 (0)16-150659 |
| E-mail: | info@cej.se |
| Website: | www.cej.se |

| | |
|---|---|
| Chairman of the board: | Håkan Halen |
| Managing Director/CEO: | Ulf Lang |
| Finances: | Anna Karin Snibb |
| Marketing: | Leif Johansson / Jan Mattsson |
| Purchasing Director: | Jarmo Kaunisto |
| Technology: | Leif Brunnberg |
| Sales: | Thomas Andersson |
| Production: | Tomas Larsson |

| | |
|---|---|
| Established: | 2000 |
| Subsidiary company to: | Hexagon AB |
| Stock-exchange listing: | Not listed |

| | |
|---|---|
| Industry sector: | B33  Manufacture of medical, precision and optical instruments, watches and clocks |
| Activity code: | 33200  Manufacture of instruments and appliances for measuring, checking, testing, navigating and other purposes, except industrial process control equipment |

**Rank in the Nordic countries (incl. subsidiaries) by**
Net turnover                    rank: 29017
Click for more rankings

**Rank in industry in the Nordic countries by :**
Net turnover          rank: 247

Click for more rankings

**Closing information (x1000 EUR)**

| | | |
|---|---|---|
| Fiscal year | 200612 | 200512 |
| Net turnover | 5.894 | 5.537 |
| - exports | | |
| Foreign sales | | |
| Financial expenses | 41 | 4 |
| Earnings before taxes | 387 | 1.324 |
| Total assets | 3.639 | 3.122 |
| Current assets | 3.072 | 2.914 |
| Current liabilities | 2.335 | 2.014 |
| Equity capital | 1.110 | 1.031 |
| - share capital | 33 | 33 |
| Employees (average) | 37 | 30 |
| Shareholders | | |
| Investments in fixed assets | | |

**Financial ratios**

| | | |
|---|---|---|
| Solvency | 30.5% | 33.0% |
| Turnover per employee | 159 | 185 |
| Earnings as % of turnover | 6.6% | 23.9% |
| Return on assets (ROA) | 10.6% | 42.4% |
| Current ratio | 131.6% | 144.7% |
| Return on equity (ROE) | 34.9% | 128.4% |

Closing figures are converted from local currency to euros according to the exchange rate on closing date. Source for the exchange rates: Sveriges Riksbank

The closing information is gathered directly from the companies or from UC (Sweden), CreditInform (Norway), KOB (Denmark) and Asiakastieto (Finland).

Alphabetical company index

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z Å Ä Ö  Other

Company Description

# Hexagon Metrology Nordic Ab
Eskilstuna, Sodermanland, Sweden

Line Of Business:
**INDUSTRIAL MACHINERY AND EQUIPMENT**

**Physical Address:**
Filargatan 3
632 29 Eskilstuna,
Sodermanland
Sweden (Map)

## Key Hexagon Metrology Nordic Ab Financials

| | |
|---|---|
| 2007 Sales (mil.) | $10.4 |
| Employees At This Location | 45 |
| Employees Total | 45 |

## Competition

**Competitive Landscape** for Architects Offices

Demand for architects' services depends heavily on the volume of residential and commercial construction. Because most costs are fixed, profitability depends on a constant inflow of work....

## Hexagon Metrology Nordic Ab Executives

| Title | Name | Contact |
|---|---|---|
| Marketing, Other | Bo Eneholm | Network | E-mail |
| Director/Board Member | Gert Ove Ragnar Viebke | Network | E-mail |
| Sales, Other | Magnus Linbom | Network | E-mail |

# EXHIBIT 12

 European Patent Attorneys
Trademark Attorney



PATENTS & TECHNOLOGY SURVEYS SA

Rue des Terreaux 7
P.O. Box 2848
CH-2001 Neuchâtel
Switzerland

Phone   +41-(0)32 724 96 60
Fax      +41-(0)32 724 96 62
info@patentattorneys.ch
www.patentattorneys.ch

**REGISTERED**

Tim Jackson
Chief Patent Attorney
Renishaw plc
New Mills, Wotton-under-Edge
Gloucestershire GL12 8JR
United Kingdom

(Also Facsimile: +44 (0) 1453 524051)

| | |
|---|---|
| Our reference | TESA-D-15 / GG |
| Your reference | |
| Date | January 21, 2008 |

## WITHOUT PREJUDICE

### Your Email dated 2007-12-13

Dear Sir

We are writing to you in name and on behalf of our client, TESA SA, whom we represent in intellectual property matters and refer to the email message addressed to Hexagon on 2007-12-13. Our attention has been retained in particular in the different patents and applications mentioned in the email message at issue.

We refer in particular to:

- US Patent US5505005

that you have brought to Hexagon's attention, in relation to TESA's magnetic probe falling under the denomination "Tesastar-mp", and to:

- Application for reissue of US7024783; and other pending national phases of WO2003083407

in relation with the tool magazine of our client.

You have further brought to Hexagon's attention the following patent application relating to the "Revo" line of products.

- PCT application WO2007107776

- PCT application WO2007107777

2

- PCT application WO2006114570

- PCT application WO2006115923

- PCT application WO2006114567

We have reviewed the situation, as regards the rights conferred by the above patents and applications and have reached the conclusion that the devices and systems at issue do not infringe any valid claim.

For what US5505005 is concerned, we note that claim 1 of this patent deals with a "touch probe for a coordinate measuring machine, having an elongate stylus and means for detecting contact of said stylus with an object /.../".

The structure associated to the "means for detecting contact of said stylus" is not specified by claim language and, accordingly, should be found in the patent's specification, in particular referring to the structures disclosed in the various embodiments of the invention.

It seems to us that US5505005 deals with a touch probe equipped with strain sensors in the retaining module. This structure is disclosed, in particular, in embodiments corresponding to Figures 4 and 6 and, among others, the passage at column 6, lines 6-32 of the description which describe a strain-sensitive load cell in the retaining module for detecting stylus contact.

The probe at issue is not equipped with a strain-sensitive load cell as in the embodiments of figures 4 and 6, thus it does not include a structure corresponding, directly or by equivalent, to that embodiment.

US5505005, in the fourth embodiment depicted at figure 7 and the passage of the description from column 8, line 35, to column 9, line 20, discloses a probe structure including, among other things, an electric circuit incorporating balls 238, rollers 236 and six conducting helical springs extending between the balls 238 and an annular printed circuit board 282 provided on the upper casing, with the circuit board further having a pair of terminals 286 on the top face. Each of the electrical terminals 286 contacts a spring loaded pin 268, thus enabling electrical connection of the electrical circuit which incorporates the balls 238 and rollers 236 to suitable processing circuitry provided e.g. on route to the machine control (via rod 262). The patent further states, "[c]ontact between the sensing tip 242 of the stylus 232 and a workpiece may be detected by measuring small-scale changes in the resistance of the electrical circuit, as disclosed in U.S. Pat. No. 4,153,998."

It seems to us that an electrical circuit is critical to detecting contact of a stylus with a workpiece, but the only instance in which US5505005 explicitly states, with respect to the fourth embodiment, that a circuit assists in detecting contact of a stylus with a workpiece is at col. 9, lines 17-20, where the patent mentions US4153998. This patent, though it is described in US5505005 as "measuring small-scale changes in the resistance of the electrical circuit," never uses the word "resistance." More fundamentally, we do not understand how US4153998 relates to the circuit shown in Fig. 7. Yet claim 1 must incorporate US4153998 if claim 1 incorporates the fourth embodiment because US5505005 reasonably draws a link between the means-for-detecting limitation and the specification only at the point where US4153998 is mentioned.

Overall, to the extent claim 1 of US5505005 can incorporate the fourth embodiment, the claim strikes us as indefinite. Therefore, if you have the opinion that claim 1 by incorporating the fourth embodiment is infringed, we request more information concerning your interpretation of claim 1 and its support in the specification.

3

In light of the foregoing, we conclude that the probe of our client does not infringe claim 1 of US5505005 and, *a fortiori*, none of the dependent claims.

Turning now to the reissue of US7024783, the claims that you have had attached to your email have been recently filed to the USPTO, and have not yet been the object of any substantive examination. We are of the opinion that the products of our client do not read on any valid claim issuable from US7024783.

Concerning the other pending national phases of WO2003083407, we note that these applications are still unexamined and, especially in the light of the published search report, it is not possible to establish their valid scope. We are of the opinion, however, that the probe and magazine of our client do not read on the published claim, neither on any issuable valid claim.

The international applications WO2007107776, WO2007107777, WO2006114570, WO2006115923 and WO2006114567, are likewise in the examination phase and, where a national phase has started at all, there is no clear indication of the scope of validity of their potential outcome, particularly when considering the published international search reports. We do not think that the products of our client could infringe on any valid claim from these applications.

Conclusions

The foregoing discussion shows that we have investigated your rights and answered you in good faith. We have come to the conclusion that your rights are not infringed upon by the products and systems at issue.

Very truly yours

Patents and Technology Surveys Ltd.

Giovanni GERVASIO

# EXHIBIT 13



US 20080140249A1

(19) **United States**

(12) **Patent Application Publication**     (10) Pub. No.: **US 2008/0140249 A1**

HANNS et al.     (43) Pub. Date:     **Jun. 12, 2008**

---

(54) **METHOD AND APPARATUS FOR DETERMINING POSITIONS**

(75) Inventors:     **Gunther HANNS**, Widnau (CH);
**Heinz LIPPUNER**, Rebstein (CH)

Correspondence Address:
**WORKMAN NYDEGGER**
**60 E. SOUTH TEMPLE, SUITE 1000**
**SALT LAKE CITY, UT 84111**

(73) Assignee:     **LEICA GEOSYSTEMS AG**,
Heerbrugg (CH)

(21) Appl. No.:     **11/948,731**

(22) Filed:     **Nov. 30, 2007**

(30)     **Foreign Application Priority Data**

Dec. 7, 2006     (CH) ..................................... 01992/06

**Publication Classification**

(51) **Int. Cl.**
*G06K 9/62*     (2006.01)
*G06F 17/00*     (2006.01)
(52) **U.S. Cl.** ........................................................ **700/225**

(57)     **ABSTRACT**

For determining positions of a support having a bar code relative to a sensor array, the position of lines in the region of the sensor array is determined at least once and a position is determined therefrom. Thereafter, at least one line of the bar code is selected, a displacement of the position of the at least one selected line in the region of the sensor array is registered and the actual position is calculated therefrom by means of a previously determined position. An incremental and rapid measurement is thus permitted with a bar code and a sensor array.



**Drehrichtung**

Direction of rotation



US 20080062526A1

(19) **United States**

(12) **Patent Application Publication** (10) Pub. No.: **US 2008/0062526 A1**

Hinderling                                    (43) Pub. Date: **Mar. 13, 2008**

(54) TARGET ACQUISITION DEVICE

(75) Inventor:  **Juerg Hinderling**, Marbach (CH)

Correspondence Address:
**ROTHWELL, FIGG, ERNST & MANBECK,
P.C.
1425 K STREET, N.W.
SUITE 800
WASHINGTON, DC 20005 (US)**

(73) Assignee:  **Leica Geosystems AG**, Heerbrugg (CH)

(21) Appl. No.:     **11/579,269**

(22) PCT Filed:    **Apr. 29, 2005**

(86) PCT No.:     **PCT/EP05/04618**

    § 371(c)(1),
    (2), (4) Date:   Sep. 28, 2007

(30)         **Foreign Application Priority Data**

May 4, 2004   (CH) ........................................... 00792/04

**Publication Classification**

(51) Int. Cl.
    *G02B 27/00*     (2006.01)
(52) U.S. Cl. ................................................. **359/601**

(57)          **ABSTRACT**

For the deliberate attenuation of beam components which originate from multiple reflections, an attenuation filter (**18; 19**) which produces an attenuation of the intensity by at least a factor of 0.7, preferably at least 0.5 or 0.3, is arranged in each case before a receiver (**2**) and after a transmitter (**1**). Alternatively or additionally, deflection means, such as a mirror (**10**) or a cubic prism (**14**), can be formed so as to attenuate a beam. Since multiply reflected beam components pass through the attenuation means at least twice as frequently as the regular beam components the former are accordingly more greatly attenuated. Furthermore, an entry surface (**5**) of the receiver (**2**) may be surrounded by a conical deflection surface which substantially absorbs light incident on it and reflects the remainder in directions other than the direction of incidence, so that this cannot give rise to multiple reflections.



Case 1:08-cv-03485    Document 45-14    Filed 08/13/2008    Page 4 of 3



US 20070242258A1

(19) **United States**

(12) **Patent Application Publication** (10) Pub. No.: **US 2007/0242258 A1**

Hinderling et al.                                                        (43) **Pub. Date:** **Oct. 18, 2007**

(54) **DEVICE FOR MEASURING THE DISTANCE TO FAR-OFF OBJECTS AND CLOSE OBJECTS**

(75) Inventors: **Juerg Hinderling**, Marbach (CH); **Paul Benz**, Diepoldsau (CH); **Marcel Buerki**, Au (CH)

Correspondence Address:
**ROTHWELL, FIGG, ERNST & MANBECK, P.C.**
**1425 K STREET, N.W.**
**SUITE 800**
**WASHINGTON, DC 20005 (US)**

(73) Assignee: **LEICA GEOSYSTEMS AG**, Heerbrugg (CH)

(21) Appl. No.: **10/583,544**

(22) PCT Filed: **Dec. 16, 2004**

(86) PCT No.: **PCT/EP04/14362**

§ 371(c)(1),
(2), (4) Date: **Jun. 1, 2007**

(30)        **Foreign Application Priority Data**

Dec. 19, 2003    (CH) ........................................... 02193/03

**Publication Classification**

(51) **Int. Cl.**
        **G01C 3/08**        (2006.01)
(52) **U.S. Cl.** ......................................................... **356/5.01**

(57)                    **ABSTRACT**

A device for measuring the distances (d) to far-off objects (8) and close objects by emitting modulated laser beams (1) that are reflected on the objects. The device includes an objective (2), structure(s) (12, 36, 38, 39, 40) for selecting beams, and a receiver (7). Beams are bundled by the objective, the beams not only containing the laser beams (3) reflected on the objects but also background beams (28). The beams in an associated cross-sectional region (34, 37) of the bundle are selected from a bundle of beams by the selection structure(s) (12, 36, 38, 39, 40). The cross-sectional region includes a first section (5) and at least one second section (6), laser beams (3) reflected by a far-off object being associated with the first section (5), and laser beams (3) reflected by a close object (8) being associated with the at least second section (6).





US 20070147446A1

(19) **United States**

(12) **Patent Application Publication** (10) Pub. No.: **US 2007/0147446 A1**

Meier (43) Pub. Date: **Jun. 28, 2007**

(54) **FREQUENCY STABILISED GAS LASER**

(75) Inventor: **Dietrich Meier**, Niedererlinsbach (CH)

Correspondence Address:
**RANKIN, HILL, PORTER & CLARK LLP**
**4080 ERIE STREET**
**WILLOUGHBY, OH 44094-7836 (US)**

(73) Assignee: **LEICA GEOSYSTEMS AG**, Heerbrugg (CH)

(21) Appl. No.: **11/548,038**

(22) Filed: **Oct. 10, 2006**

(30) **Foreign Application Priority Data**

Oct. 14, 2005    (CH) ............................................ 1665/05

**Publication Classification**

(51) **Int. Cl.**
| | | |
|---|---|---|
| *H01S* | *3/13* | (2006.01) |
| *H01S* | *3/22* | (2006.01) |
| *H01S* | *3/223* | (2006.01) |

(52) **U.S. Cl.** ............................................... 372/32; 372/55

(57) **ABSTRACT**

A method for the frequency stabilization of a gas laser with a laser tube (**1**), in stable operation includes a continuous operation control procedure with the following steps: Operating the gas laser for the radiation of laser light;

measuring an intensity of one component of the radiated laser light with a detector (**8**);

adjusting a tube temperature of the laser tube (**1**) by means of a control system (**7**), so that the measured intensity is controlled to a set-point value. During a startup phase, the procedure includes the following steps: Measuring an ambient temperature;

controlling the condition of the laser tube (**1**) by means of the control system (**7**) to a set-point state, wherein the set-point state corresponds to a temperature of the laser tube (**1**) at the measured ambient temperature in the steady condition without any further heating or cooling; and switching over to the continuous operation control.



Case 1:08-cv-03485    Document 45-14    Filed 08/13/2008    Page 6 of 7



US 20070133012A1

(19) **United States**

(12) **Patent Application Publication** (10) Pub. No.: **US 2007/0133012 A1**

Euler (43) Pub. Date: **Jun. 14, 2007**

(54) **METHOD AND DEVICE FOR DETERMINING THE ACTUAL POSITION OF A GEODETIC INSTRUMENT**

(75) Inventor: **Hans-Jürgen Euler**, Heerbrugg (CH)

Correspondence Address:
**WORKMAN NYDEGGER**
**60 E. SOUTH TEMPLE**
**SUITE 1000**
**SALT LAKE CITY, UT 84111 (US)**

(73) Assignee: **Leica Geosystems AG**, Heerbrugg (CH)

(21) Appl. No.: **10/595,189**

(22) PCT Filed: **Sep. 9, 2004**

(86) PCT No.: **PCT/EP04/10045**

§ 371(c)(1),
(2), (4) Date: **Jan. 29, 2007**

(30) **Foreign Application Priority Data**

Sep. 22, 2003 (EP) ........................... 03021133.8

**Publication Classification**

(51) Int. Cl.
*G01C 3/08* (2006.01)
*G01B 11/14* (2006.01)
(52) U.S. Cl. ........................................................ 356/614

(57) **ABSTRACT**

In order to determine the actual position (A) of a geodetic measuring instrument (1) inside a dead range (T) wherein signals originating from a positioning system are shadowed, two reference structures (5) are detected from at least two known positions and the distances associated with the reference structures (5) are measured. Image information linked to said distance measurements is captured. Said information contains data on the arrangement of the reference structures (5). The actual position (1) can be derived from subsequent capture of the reference structures (5) from a position inside the dead range (T). Image processing methods are used advantageously to identify and measure the reference structures (5).





US 20060222314A1

(19) **United States**

(12) **Patent Application Publication**     (10) Pub. No.: **US 2006/0222314 A1**
Zumbrunn et al.     (43) Pub. Date:     **Oct. 5, 2006**

(54) MEASUREMENT SYSTEM FOR DETERMINING SIX DEGREES OF FREEDOM OF AN OBJECT

(75) Inventors: **Roland Zumbrunn**, Wittinsburg (CH); **Albert Markendorf**, Suhr (CH); **Raimund Loser**, Sisseln (CH); **Jurgen Dold**, Sempach (CH)

Correspondence Address:
**RANKIN, HILL, PORTER & CLARK LLP**
**4080 ERIE STREET**
**WILLOUGHBY, OH 44094-7836 (US)**

(73) Assignee: **LEICA GEOSYSTEMS AG**, Heerbrugg (CH)

(21) Appl. No.: **11/389,757**

(22) Filed: **Mar. 27, 2006**

(30)     **Foreign Application Priority Data**

Mar. 29, 2005     (CH) ................................................. 528/05

**Publication Classification**

(51) Int. Cl.
*G02B   6/00*     (2006.01)
(52) U.S. Cl. ............................................................ **385/147**

(57)     **ABSTRACT**

A measurement system for determining six degrees of freedom ($\alpha$, $\beta$, d, $\phi$, $\chi$, $\psi$) of a reflector (**2**) or of an object (**3**) on which the reflector is arranged, comprises an angle- and distance measurement apparatus (**1**), e.g. a laser tracker, operating with a laser beam as a measurement beam (**4**). The reflector (**2**) is designed for a parallel reflection of the measurement beam (**4**) and has an apical opening or surface (**6**), in a manner such that a part of the measurement beam (**4**) directed onto the reflector (**2**), passes through the apical opening or surface (**6**), and is incident on a light-sensitive surface (**7**) arranged behind the reflector apex. Five degrees of freedom ($\alpha$, $\beta$, d, $\phi$, $\chi$) of the reflector (**2**) or the object (**3**) are computed from measurement data produced by the angle- and distance measurement apparatus (**1**) and by the light-sensitive surface (**7**).

